# UNITED STATES *v.* ONE ASSORTMENT OF 89 FIREARMS

No. 82–1047.   Argued November 30, 1983—Decided February 22, 1984

Burger, C. J., delivered the opinion for a unanimous Court.

*Richard G. Wilkins* argued the cause for the United States. With him on the briefs were *Solicitor General Lee, Assistant Attorney General Jensen, Deputy Solicitor General Frey, Sidney M. Glazer,* and *Vincent Gambale.*

*Herbert W. Louthian* argued the cause for respondent. With him on the brief was *Richard E. Gardiner.*\*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to decide whether a gun owner's acquittal on criminal charges involving firearms precludes a subsequent *in rem* forfeiture proceeding against those same firearms.

## I

### A

On January 20, 1977, the Bureau of Alcohol, Tobacco, and Firearms seized a cache of firearms from the home of Patrick Mulcahey. Mulcahey was subsequently indicted on charges that he had knowingly engaged in the business of dealing in firearms without a license, in violation of 18 U. S. C.

---

\**John L. Pottenger, Jr.,* and *Steven Wizner* filed a brief for the Jerome N. Frank Legal Services Organization of the Yale Law School as *amicus curiae* urging affirmance.

§ 922(a)(1).[1]  At his criminal trial, Mulcahey admitted that he had no license to deal in firearms and that he had bought and sold firearms during the period set forth in the indictment. His defense was that he had been entrapped into making the illegal firearms transactions.  The jury returned a verdict of not guilty.

Following Mulcahey's acquittal of the criminal charges, the United States, pursuant to its authority under 18 U. S. C. § 924(d),[2] instituted this *in rem* action for forfeiture of the seized firearms.[3]  On the basis of his earlier acquittal, Mulcahey asserted the defenses of res judicata and collateral estoppel.  The United States District Court for the District of South Carolina struck Mulcahey's defenses, reasoning that an *in rem* forfeiture proceeding under 18 U. S. C. § 924(d) is remedial in nature and is therefore properly characterized as

---

[1] Title 18 U. S. C. § 922(a)(1) provides:

"It shall be unlawful . . . for any person, except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms or ammunition, or in the course of such business to ship, transport, or receive any firearm or ammunition in interstate or foreign commerce."

[2] Title 18 U. S. C. § 924(d) provides:

"Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture and all provisions of the Internal Revenue Code of 1954 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of that Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter."

[3] The number of firearms involved in this action has varied somewhat with time.  Federal agents originally seized 105 firearms from Mulcahey, but later learned that 13 of them had been stolen.  The stolen items were returned to their rightful owners, and the forfeiture action proceeded against the remaining 92 items.  Later an additional automatic pistol was found, bringing the total to 93.  Still later, for reasons not relevant here, 4 of the seized firearms were returned to Mulcahey's wife, leaving 89 firearms as the subject of the forfeiture proceeding.

a civil proceeding. 463 F. Supp. 365, 367 (1978). The District Court then concluded that "the firearms here in question were involved in, used or intended to be used in violation of 18 U. S. C. § 922(a)(1). Such firearms are rendered subject to forfeiture under 18 U. S. C. § 924(d), which forfeiture is hereby ordered." 511 F. Supp. 133, 139 (1980).

## B

A divided United States Court of Appeals for the Fourth Circuit, sitting en banc, reversed.[4] 685 F. 2d 913 (1982). The en banc majority relied upon two theories for its conclusion that the forfeiture proceeding against these firearms was barred by Mulcahey's prior acquittal, although it did not sharply distinguish between the two. Because the majority considered the § 924(d) forfeiture proceeding to be criminal and punitive in nature, the Court of Appeals concluded that it was barred by double jeopardy principles. Looking to *Coffey* v. *United States*, 116 U. S. 436 (1886), as authority, the Court of Appeals also determined that the forfeiture action was barred by collateral estoppel, because it was based upon the same facts as the earlier criminal action. In dissent, four judges argued that neither collateral estoppel nor double jeopardy should preclude forfeiture proceedings brought under § 924(d). 685 F.2d, at 918–919 (Winter, J., joined by Butzner, Russell, and Murnaghan, JJ., dissenting). We granted certiorari, 459 U. S. 1199 (1983), and we reverse.

## I

In *Coffey* v. *United States, supra,* this Court held that a forfeiture action brought against certain distilling equipment was barred by the owner's prior acquittal on charges of removing and concealing distilled spirits with the intent to defraud the revenue. The Court stated:

---

[4] A divided panel of the Fourth Circuit had previously reversed the District Court's forfeiture order. 669 F. 2d 206 (1982).

"[W]here an issue raised as to the existence of the act or fact denounced has been tried in a criminal proceeding, instituted by the United States, and a judgment of acquittal has been rendered in favor of a particular person, that judgment is conclusive in favor of such person, on the subsequent trial of a suit *in rem* by the United States, where, as against him, the existence of the same act or fact is the matter in issue, as a cause for the forfeiture of the property prosecuted in such suit *in rem*. It is urged as a reason for not allowing such effect to the judgment, that the acquittal in the criminal case may have taken place because of the rule requiring guilt to be proved beyond a reasonable doubt, and that, on the same evidence, on the question of preponderance of proof, there might be a verdict for the United States, in the suit *in rem*.  Nevertheless, the fact or act has been put in issue and determined against the United States; and all that is imposed by the statute, as a consequence of guilt, is a punishment therefor.  There could be no new trial of the criminal prosecution after the acquittal in it; and a subsequent trial of the civil suit amounts to substantially the same thing, with a difference only in the consequences following a judgment adverse to the claimant."  *Id.*, at 443.

Although the language quoted above incorporates notions of both collateral estoppel and double jeopardy, the *Coffey* Court did not identify the precise legal foundation for the rule of preclusion it announced.  Perhaps for this reason, later decisions of this Court have reflected uncertainty as to the exact scope of the *Coffey* holding.

In *Helvering* v. *Mitchell*, 303 U. S. 391 (1938), the Court considered the preclusive effect of a prior criminal acquittal on a subsequent action for a monetary penalty.  The defendant taxpayer in *Mitchell* was acquitted of charges that he willfully attempted to evade and defeat the income tax by

fraudulently misstating certain items on his income tax return. When the Commissioner of Internal Revenue then brought an action to recover a substantial monetary penalty for fraudulent avoidance of income tax, the taxpayer argued that the subsequent penalty action was barred by res judicata, collateral estoppel, and the *Coffey* rule of preclusion.

This Court, speaking through Justice Brandeis, disagreed. Although the taxpayer argued and the Government conceded that the factual matters at issue in the penalty proceeding had been litigated and determined in the prior criminal action, the Court concluded that "[t]he difference in degree of the burden of proof in criminal and civil cases precludes application of the doctrine of *res judicata.*" 303 U. S., at 397. The *Mitchell* Court viewed the criminal acquittal as nothing more than a determination that the evidence in the criminal setting was not sufficient to overcome all reasonable doubt that the accused was guilty. See *Lewis* v. *Frick*, 233 U. S. 291, 302 (1914). The Court went on to state:

> "That acquittal on a criminal charge is not a bar to a civil action by the Government, remedial in its nature, arising out of the same facts on which the criminal proceeding was based has long been settled. *Stone* v. *United States*, 167 U. S. 178, 188; *Murphy* v. *United States*, 272 U. S. 630, 631, 632. Compare *Chantangco* v. *Abaroa*, 218 U. S. 476, 481, 482." 303 U. S., at 397–398 (footnote omitted).

Turning to the taxpayer's argument that double jeopardy barred the assessment of a monetary penalty following his acquittal on related criminal charges, the Court noted:

> "Congress may impose both a criminal and a civil sanction in respect to the same act or omission; for the double jeopardy clause prohibits merely punishing twice, or attempting a second time to punish criminally, for the same offense. The question for decision is thus whether

[the monetary penalty] imposes a criminal sanction. That question is one of statutory interpretation." *Id.*, at 399.

In concluding that the monetary penalty was merely a remedial civil sanction authorized by Congress to be assessed at the discretion of those administering the tax law, the Court observed that forfeiture of goods or their value and the payment of fixed or variable sums of money are sanctions that have long been recognized as enforceable by civil proceedings. *Id.*, at 400.

Finally, the *Mitchell* Court considered the effect of the holding in *Coffey* upon the facts before it. The Court distinguished *Coffey* on the ground that the *Coffey* rule did not apply where an acquittal on a criminal charge was followed by a civil action requiring a different degree of proof. The *Mitchell* Court concluded that the monetary penalty imposed by the revenue laws was a civil administrative sanction; it therefore found *Coffey* no obstacle to the recovery of the penalty from the taxpayer. 303 U. S., at 405–406.

Most recently, in *One Lot Emerald Cut Stones* v. *United States*, 409 U. S. 232 (1972) *(per curiam)*, the Court held that a civil action for forfeiture of a ring and stones was not barred by the owner's prior acquittal on charges of willfully and knowingly, with intent to defraud the United States, smuggling articles into the United States without complying with customs procedures. Reaffirming the principles articulated in *Helvering* v. *Mitchell*, *supra*, the Court reasoned that the difference between the burdens of proof in the criminal and civil cases precluded the application of the doctrine of collateral estoppel. Double jeopardy was equally inapposite, the Court continued, because the forfeiture asserted against the ring and stones was a civil, not a criminal, sanction. The Court distinguished *Coffey* on the ground that acquittal on the criminal charges in *One Lot Emerald Cut Stones* did not necessarily resolve the issues in the later forfeiture action. 409 U. S., at 235, n. 5.

In focusing on *Coffey* v. *United States*, the Court of Appeals appears to have overlooked the significance of *Mitchell* and *One Lot Emerald Cut Stones*. At the very least, *Mitchell* signaled that an acquittal of a criminal charge does not automatically bar an action to enforce sanctions by way of forfeiture of goods or other civil penalties. Whatever the validity of *Coffey* on its facts, its ambiguous reasoning seems to have been a source of confusion for some time. As long ago as *Mitchell*, this Court was urged to disapprove *Coffey* so as to make clear that an acquittal in a criminal trial does not bar a civil action for forfeiture even though based on the identical facts. Indeed, for nearly a century, the analytical underpinnings of *Coffey* have been recognized as less than adequate.[5] The time has come to clarify that neither collateral estoppel nor double jeopardy bars a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges. To the extent that *Coffey* v. *United States* suggests otherwise, it is hereby disapproved.

## III

### A

The disposition of the instant case follows readily from the principles articulated in *Mitchell* and *One Lot Emerald Cut Stones*. Mulcahey first argues that, because of his earlier criminal acquittal, the doctrine of collateral estoppel operates to preclude the § 924(d) forfeiture action. But an acquittal on criminal charges does not prove that the defendant is innocent; it merely proves the existence of a reasonable doubt as to his guilt. We need not be concerned whether the jury decided to acquit Mulcahey because he was entrapped into making an illegal sale or whether the jurors were not convinced of

---

[5] See, *e. g.*, *United States* v. *Burch*, 294 F. 2d 1, 3, n. 2 (CA5 1961); *United States* v. *One Dodge Sedan*, 113 F. 2d 552, 553, and n. 1 (CA3 1940) (collecting cases and law review articles); 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.418[3], pp. 587–589, and n. 12 (1983) (collecting cases).

his guilt beyond a reasonable doubt for other reasons. In either case, the jury verdict in the criminal action did not negate the possibility that a preponderance of the evidence could show that Mulcahey was engaged in an unlicensed firearms business. Mulcahey's acquittal on charges brought under § 922(a)(1) therefore does not estop the Government from proving in a civil proceeding that the firearms should be forfeited pursuant to § 924(d). It is clear that the difference in the relative burdens of proof in the criminal and civil actions precludes the application of the doctrine of collateral estoppel. *Helvering* v. *Mitchell*, 303 U. S., at 397; *One Lot Emerald Cut Stones* v. *United States, supra,* at 235.

## B

Mulcahey next contends that a forfeiture proceeding under § 924(d) is barred by the Double Jeopardy Clause of the Fifth Amendment. Unless the forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable. *Helvering* v. *Mitchell*, 303 U. S., at 398–399. The question, then, is whether a § 924(d) forfeiture proceeding is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial. Resolution of this question begins as a matter of statutory interpretation. *Id.,* at 399. As the Court noted in *United States* v. *Ward,* 448 U. S. 242, 248 (1980):

> "Our inquiry in this regard has traditionally proceeded on two levels. First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. See *One Lot Emerald Cut Stones* v. *United States, supra,* at 236–237. Second, where Congress has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or

effect as to negate that intention. See *Flemming* v. *Nestor,* 363 U. S. 603, 617–621 (1960)."

Applying the first prong of the *Ward* test to the facts of the instant case, we conclude that Congress designed forfeiture under § 924(d) as a remedial civil sanction. Congress' intent in this regard is most clearly demonstrated by the procedural mechanisms it established for enforcing forfeitures under the statute. Section 924(d) does not prescribe the steps to be followed in effectuating a forfeiture, but rather incorporates by reference the procedures of the Internal Revenue Code of 1954 (Code), 26 U. S. C. §§ 7321–7328. The Code in turn provides that an action to enforce a forfeiture "shall be in the nature of a proceeding in rem in the United States District Court for the district where such seizure is made." 26 U. S. C. § 7323. In contrast to the *in personam* nature of criminal actions, actions *in rem* have traditionally been viewed as civil proceedings, with jurisdiction dependent upon seizure of a physical object. See *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U. S. 663, 684 (1974). In addition to establishing the *in rem* nature of the action, the Code authorizes a summary administrative proceeding for forfeiture of items valued at $2,500 or less, for which notice of a seizure may be by publication. See 26 U. S. C. § 7325. By creating such distinctly civil procedures for forfeitures under § 924(d), Congress has "indicate[d] clearly that it intended a civil, not a criminal, sanction." *Helvering* v. *Mitchell, supra,* at 402.

Moreover, § 924(d) is somewhat broader in scope than the criminal provisions of 18 U. S. C. § 922. Section 924(d) subjects to forfeiture "[a]ny firearm or ammunition involved in or used *or intended to be used in,* any violation of the provisions of this chapter." (Emphasis added.) But § 922(a)(1), the substantive criminal provision under which Mulcahey was prosecuted, does not render unlawful an *intention* to engage in the business of dealing in firearms without a license; only the completed act of engaging in the prohibited business is

made a crime. See n. 1, *supra*. Whatever the actual scope of the conduct embraced by § 924(d), it is apparent from the differences in the language of these two statutes that the forfeiture provisions of § 924(d) were meant to be broader in scope than the criminal sanctions of § 922(a)(1).

Finally, the forfeiture provision of § 924(d) furthers broad remedial aims. Section 924(d) was enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968, Pub. L. 90–351, 82 Stat. 233, and later retained without alteration in the Gun Control Act of 1968, Pub. L. 90–618, 82 Stat. 1224. In enacting the 1968 gun control legislation, Congress "was concerned with the widespread traffic in firearms and with their general availability to those whose possession thereof was contrary to the public interest." *Huddleston* v. *United States*, 415 U. S. 814, 824 (1974). Accordingly, Congress sought to "control the indiscriminate flow" of firearms and to "assist and encourage States and local communities to adopt and enforce stricter gun control laws." H. R. Rep. No. 1577, 90th Cong., 2d Sess., 8 (1968). Section 924(d) plays an important role in furthering the prophylactic purposes of the 1968 gun control legislation by discouraging unregulated commerce in firearms and by removing from circulation firearms that have been used or intended for use outside regulated channels of commerce. Keeping potentially dangerous weapons out of the hands of unlicensed dealers is a goal plainly more remedial than punitive. Accordingly, we hold that Congress viewed § 924(d) forfeiture as a remedial civil sanction rather than a criminal punishment.[6]

---

[6] Mulcahey relies heavily upon Congress' labeling of § 924 with the appellation "Penalties," arguing that inclusion of the forfeiture provision in that section demonstrates Congress' intention to create an additional criminal sanction. This argument is unavailing; both criminal and civil sanctions may be labeled "penalties." Moreover, the congressional Reports accompanying § 924 describe it as *"contain[ing] the penalty and forfeiture provisions,"* H. R. Rep. No. 1577, 90th Cong., 2d Sess., 17 (1968); S. Rep. No. 1097, 90th Cong., 2d Sess., 117 (1968), indicating that Congress was cognizant of the important differences between criminal punishment and *in rem* forfeiture.

We now turn to the second aspect of our inquiry: "whether the statutory scheme [is] so punitive either in purpose or effect as to negate" Congress' intention to establish a civil remedial mechanism. *United States* v. *Ward*, 448 U. S., at 248–249. "'Only the clearest proof'" that the purpose and effect of the forfeiture are punitive will suffice to override Congress' manifest preference for a civil sanction. *Id.*, at 249 (quoting *Flemming* v. *Nestor*, 363 U. S. 603, 617 (1960)). In *Kennedy* v. *Mendoza-Martinez*, 372 U. S. 144, 168–169 (1963), we set forth a list of considerations that has proved helpful in the past in making such determinations.[7] See, *e. g.*, *United States* v. *Ward*, *supra*, at 249–251; *Bell* v. *Wolfish*, 441 U. S. 520, 537–538 (1979).

Only one of the *Mendoza-Martinez* factors—whether or not the proscribed behavior is already a crime—lends any support to Mulcahey's position that § 924(d) imposes a criminal penalty. The fact that actions giving rise to forfeiture proceedings under § 924(d) may also entail the criminal penalties of § 922(a)(1) admittedly suggests that § 924(d) is criminal in nature. But that indication is not as strong as it might seem at first blush. *United States* v. *Ward*, *supra*, at 250. Clearly "Congress may impose both a criminal and a civil sanction in respect to the same act or omission," *Helvering* v. *Mitchell*, 303 U. S., at 399; indeed, it has done so on other

---

[7] In *Kennedy* v. *Mendoza-Martinez*, the Court enumerated "the tests traditionally applied to determine whether an Act of Congress is penal or regulatory in character." 372 U. S., at 168.

"Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions." *Id.*, at 168–169 (footnotes omitted).

This list of considerations is, however, "neither exhaustive nor dispositive." *United States* v. *Ward*, 448 U. S. 242, 249 (1980).

occasions. Moreover, Congress in fact drafted § 924(d) to cover a broader range of conduct than is proscribed by the criminal provisions of § 922(a)(1). See *supra*, at 363–364. Because the sanction embodied in § 924(d) is not limited to criminal misconduct, the forfeiture remedy cannot be said to be coextensive with the criminal penalty. What overlap there is between the two sanctions is not sufficient to persuade us that the forfeiture proceeding may not legitimately be viewed as civil in nature.

In short, an analysis of the *Mendoza-Martinez* factors in no way undermines Congress' classification of the § 924(d) forfeiture action as a civil sanction. Mulcahey has failed to establish by the "clearest proof" that Congress has provided a sanction so punitive as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty." *Rex Trailer Co.* v. *United States*, 350 U. S. 148, 154 (1956). We accordingly conclude that the forfeiture mechanism set forth in § 924(d) is not an additional penalty for the commission of a criminal act, but rather is a separate civil sanction, remedial in nature. Because the § 924(d) forfeiture proceeding brought against Mulcahey's firearms is not a criminal proceeding, it is not barred by the Double Jeopardy Clause.

## IV

We hold that a gun owner's acquittal on criminal charges involving firearms does not preclude a subsequent *in rem* forfeiture proceeding against those firearms under § 924(d). Neither collateral estoppel nor the Double Jeopardy Clause affords a doctrinal basis for such a rule of preclusion, and we reject today the contrary rationale of *Coffey* v. *United States*, 116 U. S. 436 (1886). The judgment of the United States Court of Appeals for the Fourth Circuit is accordingly reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*