**UNITED STATES of America**

v.

**J & T COAL, INC.**

**Crim. A. No. 92–00061–01–B.**

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

March 29, 1993.

---

Steve Baer, Asst. U.S. Atty., Roanoke, VA, for plaintiff.

Lewey K. Lee, McAfee, Bledsoe, Lovell & Lee, Norton, VA, Birg E. Sergent, Pennington Gap, VA, William E. Bradshaw, Big Stone Gap, VA, for J & T Coal, Inc.

### CORRECTED MEMORANDUM OPINION AND ORDER

WILSON, District Judge.

Defendant J & T Coal, Inc. ("J & T Coal") has filed a motion to dismiss six counts of an indictment charging violation of 30 U.S.C. § 820(d) and 30 C.F.R. §§ 75.202(a)–(b), 75.-203(a)–(b), 75.220(a)(1), and 75.1200–2(b).[1] J & T Coal contends that because the government previously assessed civil penalties against it under 30 U.S.C. § 820(a) for violation of the same regulations, pursuit of the criminal penalties under § 820(d) violates the Double Jeopardy Clause. Because J & T Coal has failed to prove that the assessments under § 820(a) were punitive rather than remedial, the court will deny its plea of double jeopardy.

### I.

On February 13, 1991, a roof fall in one of J & T Coal's mines killed four miners. The Mine Safety and Health Administration assessed approximately $300,000 in civil penalties against J & T Coal under 30 U.S.C. § 820(a)[2] in connection with the accident. J & T Coal defaulted on payment of the assessment, which this court subsequently enforced in a civil action brought by the government.[3] On December 16, 1992, J & T Coal was

---

**1.** The indictment also contains six counts against Garry Williams, Sr., J & T Coal's mine superintendent, charging violation of the same code section and regulations, as well as 30 U.S.C. § 820(c). These counts are not at issue.

**2.** Section 820(a) provides:

**Civil penalty for violation of mandatory health or safety standards**

The operator of a coal or other mine in which a violation occurs of a mandatory health or safety standard or who violates any other provision of this chapter, shall be assessed a civil penalty by the Secretary which penalty shall not be more than $50,000 for each such violation. Each occurrence of a violation of a mandatory health or safety standard may constitute a separate offense.

30 U.S.C.A. § 820(a) (West Supp.1991).

**3.** *See United States v. J & T Coal,* Civ.Act. No. 92–0112–B (W.D.Va. Feb. 4, 1993) (Final Judgment and Order).

indicted under 30 U.S.C. § 820(d)[4] for willful violations of the same safety standards that formed the basis for the assessments.

## II.

■ The Supreme Court has stated: "Congress may impose both a criminal and a civil sanction in respect to the same act or omission." *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). However, the Double Jeopardy Clause prohibits "punishing twice, or attempting [to punish twice], for the same offense." *Id.; see also United States v. Halper,* 490 U.S. 435, 442, 109 S.Ct. 1892, 1898, 104 L.Ed.2d 487 (1989). Because the government previously pursued and obtained assessments for the same actions that resulted in the indictment, the issues here are whether the criminal proceedings constitute a second attempt to punish or, if successful, will in fact result in a second punishment. These questions require separate, albeit intertwined and sometimes overlapping, analyses. *See id.* at 442, 447, 109 S.Ct. at 1898, 1901; *Karpa v. Commissioner of Internal Revenue,* 909 F.2d 784, 787–88 (4th Cir.1990).

### A. Multiple attempts to punish.

■ Whether the pursuit of penalties under both §§ 820(a) and 820(d) constitutes multiple attempts to punish depends on whether, as a matter of statutory construction, § 820(a) is criminal or civil in nature. *Halper,* 490 U.S. at 442, 109 S.Ct. at 1898; *Helvering v. Mitchell,* 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). The Supreme Court explained the proper two pronged analysis in *United States v. Ward:*

First, we have set out to determine whether Congress, in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other. Second, where Congress has indicated an intention to establish a civil penal-ty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.

448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641, 65 L.Ed.2d 742 (1980) (citations omitted).

As to the test's first prong, Congress clearly expressed its preference that § 820(a) be considered civil in nature since the section is labeled "Civil penalty" and does not apply solely to "willful" violations. *See United States v. WRW Corporation,* 986 F.2d 138, 141 (6th Cir.1993). The examination under the second prong must therefore clearly show a contrary purpose or effect to "override Congress' manifest preference for a civil sanction." *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 365, 104 S.Ct. 1099, 1106, 79 L.Ed.2d 361 (1984). The Supreme Court has enunciated certain "helpful" factors in determining whether the sanction is punitive in purpose or effect:

'Whether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter,* whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....'

*Id.* at 365 n. 7, 104 S.Ct. at 1106 n. 7 (quoting *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 168–69, 83 S.Ct. 554, 567–68, 9 L.Ed.2d 644 (1963)) (emphasis in original).[5]

Applying the *Mendoza–Martinez* factors, the court does not find sufficient proof of a contrary purpose or effect to override Congress' preference that the penalty provided under § 820(a) be considered civil in nature. Several factors can be disposed of summari-

---

4. Section 820(d) provides:

   **Criminal penalties**
   Any operator who willfully violates a mandatory health or safety standard ... shall, upon conviction, be punished by a fine of not more than $25,000, or by imprisonment for not more than one year, or by both....

30 U.S.C.A. § 820(d) (West 1986).

5. The *Mendoza–Martinez* factors are, however, " 'neither exhaustive nor dispositive,' " *id.* (quoting *Ward,* 448 U.S. at 249, 100 S.Ct. at 2641), and " 'may often point in differing directions,' " *id.* (quoting *Mendoza–Martinez,* 372 U.S. at 169, 83 S.Ct. at 568).

ly. The first three factors clearly are not implicated by § 820(a). *WRW Corporation,* 986 F.2d at 141. Likewise, the fifth factor—whether the underlying behavior is already a crime—is not implicated because § 820(a) "cover[s] a broader range of conduct ... [and is] not co-extensive with" § 820(d). *Id.* at 142. The other factors, however, require further consideration and overlap to a certain extent with the second issue—whether this prosecution would in fact result in multiple punishments. *See Halper,* 490 U.S. at 448, 109 S.Ct. at 1901.

## B. Multiple punishments in fact.

Whether the prosecution under § 820(d) would in fact result in multiple punishments for the same offense depends on whether, as applied, the earlier assessments under § 820(a) constituted punishment. The Supreme Court recently redefined the multiple punishment issue in *Halper.* The Court stated that the issue can be resolved "only by assessing the character of the actual sanctions imposed." *Id.* at 447, 109 S.Ct. at 1901. In so doing, "it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." *Id.* at 447, n. 7, 109 S.Ct. at 1901, n. 7.[6]

*Halper* held that a civil sanction constitutes criminal punishment under the Double Jeopardy Clause "to the extent the ... sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 449, 109 S.Ct. at 1902. The trial court has "the discretion to determine ... the size of the civil sanction the Government may receive without crossing the line between remedy and punishment." *Id.* at 450, 109 S.Ct. at 1902. The court must keep in mind, however, that "the Government is entitled to rough remedial justice, that is, it may de-

mand compensation according to somewhat imprecise formulas, such as reasonable liquidated damages or a fixed sum plus double damages, without being deemed to have imposed a second punishment." *Id.* at 446, 109 S.Ct. at 1900. Therefore a rational relationship need only be shown between the sanction and the damages sustained. *Id.* at 451, 109 S.Ct. at 1903.

The court's inquiry thus returns to the remaining *Mendoza–Martinez* factors: whether the sanction promotes retribution and deterrence, whether the sanction has an alternative purpose, and whether the sanction appears excessive in relation to the alternative purpose. J & T Coal has failed to sustain its burden of proof in this respect.[7] It has offered no evidence of any deterrent or retributive purpose in the $300,000 assessment. Absent evidence of a retributive or deterrent purpose, civil penalties under § 820(a) may just as easily be said to promote the remedial goals of mine safety, *WRW Corporation,* 986 F.2d at 141–42, and reimbursement for the government's expenditures in connection with the underlying acts.[8] Furthermore, the assessments under that section do not appear excessive in relation to its alternative remedial purposes. The government has offered uncontradicted evidence that its costs in investigating the accident and pursuing sanctions amounted to *at least* $163,729. (Elam Aff. at 2) While the sanctions under § 820(a) exceeded that figure, the court cannot say that they reached the point, as in *Halper,* where they did not "remotely approximate the Government's damages and actual costs, and [where] rough justice [became] clear injustice." 490 U.S. at 446, 109 S.Ct. at 1900.

## III.

For the reasons stated above, the court finds that the prosecution under § 820(d)

---

6. Therefore, unlike in the multiple prosecution context, "the labels 'criminal' and 'civil' are not of paramount importance." *Id.* at 447, 109 S.Ct. at 1901.

7. The defendant has the burden of proving double jeopardy. *See U.S. v. Parker,* 582 F.2d 953, 954 n. 2 (5th Cir.1978), *cert. denied,* 440 U.S. 946, 99 S.Ct. 1424, 59 L.Ed.2d 635 (1979).

8. The court is reluctant to inquire further into the goals of § 820(a). In a concurring opinion in

*Halper,* Justice Kennedy warned against "undertak[ing] a broad inquiry into the subjective purposes that may be thought to lie behind a given judicial proceeding.... Such an inquiry would be amorphous and speculative, and would mire the courts in the quagmire of differentiating among the multiple purposes that underlie every proceeding, whether it be civil or criminal in name." 490 U.S. at 453, 109 S.Ct. at 1904.

subsequent to the imposition of civil sanctions under § 820(a) would not subject J & T Coal to multiple punishment in contravention of the Double Jeopardy Clause.

Accordingly, J & T Coal's motion to dismiss is denied.