Argued and submitted May 20, 2021, reversed and remanded March 8, petition for review allowed July 20, 2023 (371 Or 308)
See later issue Oregon Reports

YAMHILL COUNTY,
a political subdivision of the State of Oregon
and forfeiting agency, on behalf of the
Yamhill County Interagency Narcotics Team
(YCINT) seizing agency,
*Plaintiff-Respondent,*

*v.*

REAL PROPERTY
COMMONLY KNOWN AS:
11475 NW PIKE ROAD, YAMHILL, OREGON,
YAMHILL COUNTY AND
ANY RESIDENCE, BUILDINGS, OR
STORAGE FACILITIES THEREON,
*Defendant in rem.,*

*and*

Sheryl Lynn SUBLET,
*Claimant-Appellant.*

Yamhill County Circuit Court
18CV37372; A173574

526 P3d 765

This appeal arises from a forfeiture of claimant's home based on her criminal convictions but pursuant to ORS chapter 131A, which governs "civil" forfeiture proceedings. On appeal, claimant assigns error to, among other rulings, the trial court's denial of her motion to dismiss on the grounds of double jeopardy. *Held*: As a result of Oregonians' adoption of Article XV, section 10, of the Oregon Constitution, the forfeiture of real property is criminal in nature for purposes of the Fifth Amendment prohibition on double jeopardy. Accordingly, the prior criminal proceeding precluded the subsequent forfeiture proceeding against claimant.

Reversed and remanded.

Ladd J. Wiles, Judge.

Zachary J. Stern argued the cause for appellant. Also on the brief was Ferder, Casebeer, French & Stern, LLP.

Timothy S. Sadlo argued the cause and filed the brief for respondent.

Before Kamins, Presiding Judge, and Lagesen, Chief Judge, and Jacquot, Judge.*

LAGESEN, C. J.

Reversed and remanded.

_____

* Jacquot, J., *vice* James, J. pro tempore.

**LAGESEN, C. J.**

Historically—in Oregon and elsewhere—the law has provided for the forfeiture of property involved in criminal activity, regardless of the owner's involvement in any crime. The law has done so through a legal fiction: that property itself can be a guilty actor, entitling the government to take it.

In 2000, Oregonians rejected that historical approach to forfeiture. Concerned that people were being unjustly deprived of property as penalties for crimes they did not commit, Oregonians exercised the initiative power under Article IV, section 1(2)(a), of the Oregon Constitution to approve Ballot Measure 3 (2000), a constitutional amendment. That provision, now contained in Article XV, section 10, created new limitations on forfeiture.

Among other things, the constitution now generally requires a criminal conviction before property can be forfeited, allows only for forfeiture of the instrumentalities or proceeds of the specific crime of conviction or similar crimes, and specifies that the value of any property forfeited must be "substantially proportional" to the specific crime of conviction. *See generally* Or Const, Art XV, § 10. Oregonians' constitutional rejection of the historical character of forfeiture has led to the question before us: Do forfeiture proceedings in Oregon implicate the Double Jeopardy Clause of the Fifth Amendment, even when denominated as civil proceedings, in view of Oregonians' recasting of forfeiture's character in Article XV, section 10?

This appeal arises from a forfeiture proceeding under ORS chapter 131A, which governs "civil" forfeiture proceedings. Sheryl Sublet, claimant, was convicted pursuant to a plea bargain of two counts of unlawful delivery of between 100 and 499 grams of methamphetamine, ORS 475.890, and one count of felon in possession of a firearm, ORS 166.270. The drugs underlying the convictions were found in packages that law enforcement intercepted before delivery; one of the packages was addressed to claimant's Yamhill County home. As part of her sentence, Sublet agreed to forfeit $50,000 in cashier's checks found in a search of her

home after the packages were intercepted, but she did not agree to any other forfeitures.

After claimant had been convicted and sentenced, Yamhill County initiated this forfeiture proceeding under ORS 131A.020. The county sought the forfeiture of claimant's Yamhill County home based on her convictions. The trial court rejected claimant's contention that the proceeding should be dismissed on the ground that it violated the Fifth Amendment's prohibition on double jeopardy, a jury found in favor of the county, and the trial court entered a general judgment of forfeiture in favor of the county. Claimant appealed, assigning error to, among other rulings, the trial court's denial of her motion to dismiss on the grounds of double jeopardy.

For the reasons that follow, we conclude that, as a result of Oregonians' adoption of Article XV, section 10, of the Oregon Constitution, the forfeiture of real property is criminal in nature for purposes of the Fifth Amendment prohibition on double jeopardy. Accordingly, the prior criminal proceeding precluded this subsequent forfeiture proceeding against claimant. We therefore reverse and remand with directions to dismiss the complaint.

## STANDARD OF REVIEW

Whether double jeopardy barred this proceeding presents a question of law, making our review for legal error. *State v. Worth*, 274 Or App 1, 8, 360 P3d 536 (2015), *rev den*, 359 Or 667 (2016).

## LEGAL BACKGROUND

To provide context, we start with an overview of the historical principles of forfeiture law (borrowing liberally from the United States Supreme Court's previous recounting of those principles), and the legal framework for determining when forfeiture proceedings implicate double jeopardy principles. We then provide an overview of Oregon forfeiture law, and how, as of the twenty-first century, Oregon chose to depart from the historical approach to forfeitures. We conclude by addressing how Oregon's unique constitutional choices lead to the conclusion that Oregon forfeiture

proceedings like this one activate the Fifth Amendment's bar on double jeopardy.

Historically, the law has recognized two main types of forfeitures: civil *in rem* forfeitures and criminal *in personam* forfeitures. *See, e.g.*, *United States v. Bajakajian*, 524 US 321, 327-34, 118 S Ct 2028, 141 L Ed 2d 314 (1998); *United States v. Ursery*, 518 US 267, 116 S Ct 2135, 135 L Ed 2d 549 (1996).

"Traditional *in rem* forfeitures were * * * not considered punishment against the individual for an offense." *Bajakajian*, 524 US at 331. Instead, "[t]he theory behind such forfeitures was the fiction that the action was directed against guilty property, rather than against the offender himself." *Id*. at 330 (internal quotation marks omitted). That is, "[t]he thing is here primarily considered as the offender, or rather the offence is attached primarily to the thing[.]" *The Palmyra*, 25 US 1, 14, 12 Wheat 1, 6 L Ed 531 (1827).

*In personam* forfeitures, by contrast, "have historically been treated as punitive, being part of the punishment imposed for felonies and treason in the Middle Ages and at common law." *Bajakajian*, 524 at 332. "Although *in personam* criminal forfeitures were well established in England at the time of the founding," American law generally did not allow for them until the latter half of the twentieth century. *Id*. at 332 & n 7.

Under Supreme Court precedent, the historical distinction between *in rem* forfeitures and *in personam* forfeitures is significant for the purpose of double jeopardy. *Ursery*, 518 US at 289. In general, *in rem* forfeitures are viewed as civil and, for that reason, do not implicate double jeopardy. *Id*. at 291 ("[I]t is absolutely clear that *in rem* civil forfeiture has not historically been regarded as punishment."). By contrast, *in personam* forfeitures—forfeitures intended as punishments for crimes—may implicate the double-jeopardy prohibition on multiple punishments for the same crime. *United States v. One Assortment of 89 Firearms*, 465 US 354, 362, 104 S Ct 1099, 79 L Ed 2d 361 (1984). As the Court has explained, "[u]nless the forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal

in character, the Double Jeopardy Clause is not applicable. The question, then, is whether [the] forfeiture proceeding [at issue] is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial." *Id*. (internal citation omitted).

For many years, Oregon's approach to forfeiture tracked the approach of the nation, providing for *in rem* forfeitures of property without a criminal conviction. *See, e.g.*, *Smith v. One Super Wild Cat*, 10 Or App 587, 590-91, 500 P2d 498 (1972) (discussing *in rem* nature of forfeiture and concluding that a prior conviction is not a prerequisite to forfeiture). A 1989 legislative act illustrates the historical approach: In that year, the legislature enacted provisions broadly authorizing the civil *in rem* forfeiture of currency and real and personal property involved in violations of the controlled substances law, ORS chapter 475. *See* Or Laws 1989, ch 791, §§ 3, 2(11) (defining the scope of forfeitures governed by the chapter).[1] Consistent with the historical understanding of *in rem* forfeitures, the legislature did not condition forfeiture on the state having obtained a criminal conviction or identify forfeiture as being a punishment for the crime. *See generally* Or Laws 1989, ch 791. Rather, the legislature explained that it found the forfeiture provisions were needed because, among other reasons, "[t]ransactions involving property subject to forfeiture under this Act escape taxation," and "[t]here is a need to provide for the forfeiture of certain property subject to forfeiture under this Act." Or Laws 1989, ch 791, § 1(1)(b), (d). The legislature stated further that "[t]he application of any remedy under this Act is intended to be remedial and not punitive and shall not preclude or be precluded by the application of any previous or subsequent civil or criminal remedy under any other provision of law." Or Laws 1989, ch 791, § 1(5).

Oregon's approach to forfeitures paralleled the historical and national approach until 2000. Then, through the initiative process, Oregonians opted to change direction. They adopted a measure, denominated "The Oregon Property Protection Act of 2000," that amended the state constitution

---

[1] For reasons not clear, Or Laws 1989, chapter 791, was never made a part of the Oregon Revised Statutes.

to alter the character of forfeiture. Consequently, the constitution now generally precludes forfeiture without a criminal conviction and requires that the value of any forfeited property "be substantially proportional to the specific conduct for which the owner of the property has been convicted." Or Const, Art XV, § 10(3) (2000); Or Const, Art XV, § 10(7) (2008).[2]

As the many supportive statements in the Voters' Pamphlet reflect, proponents viewed the measure as necessary to combat the perceived abuse of the civil forfeiture process to take the property of people who had not been convicted of crimes. Proponents viewed this practice as contrary to the presumption of innocence, and as an affirmative injustice. A few examples illustrate the point:

"**Measure 3 Ensures People are Innocent until Proven Guilty:**

"Measure 3 will allow criminals to have their assets seized, but the government can't keep the property permanently unless it proves the person has committed a crime. The constitutional protection of 'innocent until proven guilty' will be applied to forfeiture cases for the first time."

Official Voters' Pamphlet, General Election, Nov 7, 2000, 239 (boldface in original).

"Civil forfeitures occur an average of three times a day in Oregon. In 1999, police reported taking $2.1 million from 1,069 people. In 72 percent of those cases, no one was arrested, charged, or convicted of a crime.

"**No one should ever lose their property to the government unless they are first convicted of a crime involving the use of their property.**"

*Id*. (boldface in original).

_____

[2]  As discussed further below, Article XV, section 10, was amended via the referendum process in 2008 to allow for a different approach to animal forfeitures, and to forfeitures of money and weapons found along with controlled substances. The referendum also made several nonsubstantive organizational changes to the measure and added on additional circumstances in which property in the hands of a person without a criminal conviction could be forfeited. Those revisions generally do not affect our analysis in this case. We cite both the original provisions of Article XV, section 10, and the amended provisions of Article XV, section 10, when necessary for clarity.

"While Oregon Gun Owners and the American Civil Liberties Union of Oregon don't often agree on issues, there is one ballot Measure we both support this year—Measure 3.

"Here's why:

"All of us support taking the profit out of crime.

"All of us also believe in the constitutional protection of 'innocent until proven guilty.'

"**We support Measure 3 because we want to make sure that the property taken by the government is really being taken from criminals rather than from innocent property owners.**"

*Id*. at 240 (boldface in original).

"Most of us are surprised to learn that the cherished concept of 'innocent until proven guilty,' a cornerstone of our criminal justice system, doesn't apply in civil forfeiture cases. Under current law, the government can keep an innocent person's home, car, life-savings, and personal belongings without a criminal charge or conviction. Far too many innocent Oregonians have suffered tragic personal losses under this flawed and unjust law."

*Id*. at 241.

"**We take it for granted that people are innocent until proven guilty.**

"This is one of the most cherished doctrines in America. However, Oregon police have exploited a loophole in our Constitution.

"Through this loophole, the police are allowed to confiscate property, including cars, cash and land, from innocent Oregonians without arresting or charging them. This loophole, called Asset Forfeiture, has flipped justice on its head.

"Right now, police can take and keep your cash, property, businesses and possessions on the suspicion that they may be linked to a crime. They do not have to prove it, either! Under asset forfeiture, the accusation is enough. **In Oregon, more than 70 percent of the people who lose their property to forfeiture are never convicted of a crime**.

"Measure 3 closes this loophole by requiring a person to be proven guilty before their property can be permanently confiscated and sold.

"We fear this sort of treatment when we travel to totalitarian countries, but we face it here in Oregon."

*Id*. at 243 (boldface in original).

To redress those perceived injustices, Measure 3 proposed that voters adopt four core constitutional principles regarding forfeiture:

"Statement of principles. The people, in the exercise of the power reserved to them under the Constitution of the State of Oregon, declare that:

"(a) A basic tenet of a democratic society is that a person is presumed innocent and should not be punished until proven guilty;

"(b) The property of a person should not be forfeited in a forfeiture proceeding by government unless and until that person is convicted of a crime involving the property;

"(c) The value of property forfeited should be proportional to the specific conduct for which the owner of the property has been convicted; and

"(d) Proceeds from forfeited property should be used for treatment of drug abuse unless otherwise specified by law for another purpose."

Measure 3 (2000), § 10(2); *see also* Measure 53 (2008), § 10(2).

Under the provision adopted by voters in 2000, as amended in 2008, unless a specified exception applies, a criminal conviction of the person claiming the property is a prerequisite to the entry of a forfeiture judgment. Or Const, Art XV, § 10(3). To be subject to forfeiture, property must constitute an instrumentality or proceeds of the crime of conviction or an instrumentality of a crime similar to the crime of conviction. *Id*. The property of a person who has not been convicted of a crime is subject to forfeiture if the person consents to the forfeiture, or if the "forfeiting agency" demonstrates that the property is an instrumentality or proceeds of a crime committed by another person, and the property claimant "took the property with the intent to defeat

forfeiture of the property"; the property claimant "knew or should have known that the property constituted proceeds or an instrumentality of criminal conduct"; or the property claimant "acquiesced in the criminal conduct." *Id*. § 10(5).

The constitution also places limits on the value of property that may be taken by way of forfeiture, linking it to the crime of conviction allowing for the forfeiture: "The value of the property forfeited under the provisions of this section may not be excessive and shall be substantially proportional to the specific conduct for which the owner of the property has been convicted." Or Const, Art XV, § 10(3) (2000); Or Const, Art XV, § 10(7) (2008).

Statements opposing the measure in 2000, which were outnumbered by statements in favor, urged that the measure should be rejected for a range of reasons, including that the measure would make it harder to take animals in cases of animal cruelty, harder to take vehicles from drunk drivers, and harder to shut down drug houses. Official Voters' Pamphlet, General Election, Nov 7, 2000, 244-48. One opponent also observed that, consistent with the statements in favor, the measure made forfeiture in Oregon a criminal matter. The opponent stated further that, by doing so, Oregonians risked requiring the state to choose between prosecuting a crime and forfeiture:

> "The people who are behind Measure 3 want to abolish forfeiture. Measure 3 may accomplish this. In 1989 we were very careful to make forfeiture civil in nature. That way the state could pursue both the criminal case and the forfeiture. Measure 3 makes forfeiture criminal in nature. Therefore the state may have to choose between a criminal prosecution or forfeiture."

*Id*. at 244.

After adopting it in 2000, Oregon voters amended Article XV, section 10, once, in 2008, via the referendum process. The amendment, proposed through Measure 53 (2008), was intended to clarify that the principles in the amendment did not apply either to animals or to abandoned property, such as cash left next to a large quantity of drugs. *See* Or Const, Art XV, § 10(6)(b), (10); *see also* Official Voters' Pamphlet, Primary Election, May 20, 2008, 84-85. The amendments

also reorganized portions of the text and broadened the measure's reach to allow for the forfeiture of property constituting the instrumentalities or proceeds of crimes similar to the crime of conviction, subject, still, to the proportionality requirement. *See* Or Const, Art XV, §§ 10(2), (7).

As noted, in 2009, after the passage of Measure 53, the legislature enacted new civil forfeiture provisions, now codified in ORS chapter 131A.[3] Or Laws 2009, ch 78. In so doing, the legislature expressly provided that "[a]ll forfeitures under the provisions of this chapter are subject to the limitations of section 10, Article XV of the Oregon Constitution." ORS 131A.010(2). Although the legislature stated that "the application of any remedy under this chapter is remedial and not punitive and does not affect the application of any other civil or criminal remedy under any other provision of law," ORS 131A.010(5), the legislature also addressed the application of double jeopardy. ORS 131A.265(2) authorizes a stay of forfeiture proceedings "upon the filing of criminal charges that are related to the prohibited conduct that is the basis for the action." When the motion for a stay in the forfeiture proceedings is filed "by the defendant in the related criminal proceeding," that is deemed to be "a waiver of double jeopardy by the defendant as to the forfeiture action and any related criminal proceeding." ORS 131A.265(2). Similarly, ORS 131A.270(2) allows for a forfeiture proceeding under ORS chapter 131A to "be consolidated for trial or other resolution with any related criminal proceeding." If a criminal defendant objects or seeks to sever the forfeiture proceeding from the criminal proceeding, that is deemed to be a waiver of double jeopardy: "Any objection by the defendant to the consolidation, or any motion by the defendant to sever the related criminal case from the forfeiture action, constitutes a waiver of double jeopardy as to the related criminal action and the forfeiture action." ORS 131A.270(2).

## ANALYSIS

With that historical background in mind, we turn to the question at hand: Whether, in view of Article XV,

---

[3] The legislature also for the first time enacted criminal forfeiture provisions in 2005, after Measure 3 (2000) passed; those provisions are contained in chapter 131. *See* Or Laws 2005, ch 803.

section 10, forfeiture proceedings in Oregon implicate the Fifth Amendment's double jeopardy prohibition and, in particular, its prohibition on successive punishments for the same criminal offense. *See Ursery*, 518 US at 273 (explaining that double jeopardy prohibits, among other things, an attempt to punish an offender criminally twice for the same offense).

Under Supreme Court precedent, determining whether forfeitures, as defined under Article XV, section 10, are criminal punishments under the Double Jeopardy Clause turns on whether (1) the voters, in enacting Article XV, section 10, intended for forfeiture proceedings to be criminal and punitive or civil and remedial; and (2) if civil, whether the proceedings nonetheless are "so punitive in fact" that they cannot "be viewed as civil." *Ursery*, 518 US at 288. Here, we do not reach the second part of the inquiry; we are persuaded that, by adopting Article XV, section 10, Oregon voters intended to make those forfeitures like the one at issue here punishment for a crime. In effect, by ratifying Article XV, section 10, Oregonians rejected the legal fiction underlying *in rem* forfeitures—that property itself can be guilty so as to allow the government to take it—and replaced it with an *in personam* theory of forfeiture that implicates double jeopardy.

To begin, we acknowledge that we are working in unmapped territory. As best we can tell, no other state takes the approach to forfeiture embodied in Article XV, section 10, and neither the Oregon Supreme Court nor the United States Supreme Court has had occasion to address a scheme like the one embraced by Oregon voters. That means the answer to the question before us does not follow in an obvious way from previous case law; in that regard, we are appreciative of the arguments presented by the advocates.

That acknowledgment made, we turn to the task of ascertaining what, exactly, Oregon voters intended to accomplish by enacting Article XV, section 10. Did the voters intend to make forfeitures criminal punishments, even when imposed through civil processes? To determine whether Article XV, section 10, makes forfeitures punishment for crimes, we examine the text of the measure within its historical context. *Wittemyer v. City of Portland*, 361 Or

854, 860, 402 P3d 702 (2017). "In the case of constitutional amendments adopted by initiative, our analysis also includes sources of information that were available to the voters at the time the amendment was adopted, including the ballot title, information in the voters' pamphlet and contemporaneous news reports and editorials." *Id*. (internal quotation marks omitted). Our aim is to "determine the meaning of the provision at issue most likely understood by those who adopted it." *Couey v. Atkins*, 357 Or 460, 490-91, 355 P3d 866 (2015).

Applying that approach here, we conclude that the voters who adopted Article XV, section 10, "most likely" understood the provision to make the forfeitures that it covers criminal punishment, even while retaining a civil process for exacting them. In particular, the text of the measure, together with the statements in the voters' pamphlet about its effect, would have communicated to voters that they were making forfeitures a form of criminal punishment, even when a civil process is used to impose them.

We start with the text. As noted, as originally proposed to voters,[4] section 10(2) of Measure 3 (2000) established four core principles of forfeiture:

"Statement of principles. The people, in the exercise of the power reserved to them under the Constitution of the State of Oregon, declare that:

"(a)   A basic tenet of a democratic society is that a person is presumed innocent and should not be punished until proven guilty;

---

[4]  As mentioned, Article XV, section 10, was amended via referendum in 2008. Although the amendments modified portions of the original text of Article XV, section 10, as explained to the voters, the modifications were in furtherance of provisions designed to (1) exempt animal forfeitures from the application of the provisions; and (2) allow for seizure and forfeiture of "cash, weapons or negotiable instruments *** found in close proximity to controlled substances or to instrumentalities of criminal conduct." Or Const, Art XV, § 10(6)(b), (10); Official Voters' Pamphlet, Primary Election, May 20, 2008, 84-86. Although the 2008 amendment, among other things, added the word "generally" to section 10(2)(b), changing it from "[t]he property of a person should not be forfeited" absent a criminal conviction to "[t]he property of a person generally should not be forfeited" absent a criminal conviction, nothing in the 2008 referendum or the voters' pamphlet statements discussing it would have suggested that approval of the measure would change the overall concept of forfeiture as adopted by the voters in 2000 rather than simply exempt the identified categories from its reach.

"(b)   The property of a person should not be forfeited in a forfeiture proceeding by government unless and until that person is convicted of a crime involving the property;

"(c)   The value of property forfeited should be proportional to the specific conduct for which the owner of the property has been convicted; and

"(d)   Proceeds from forfeited property should be used for treatment of drug abuse unless otherwise specified by law for another purpose."

The plain terms of the first three of those principles would have indicated to voters that the point of the measure was to restrict the government's use of forfeiture to the criminal context. The first principle, particularly when read in the context of the next two principles, would suggest to voters that forfeitures are a form of criminal punishment that should not be imposed absent a finding of guilt. The second principle directly requires a criminal conviction as a prerequisite to forfeiture, a feature that would have strongly signaled to voters that, if they approved the measure, forfeitures would be a component of criminal punishment. The third principle underscores the notion of forfeitures as a form of punishment for criminal convictions by specifically requiring that forfeitures be proportional to criminal conduct. An ordinary voter reading that provision likely would understand it to be a variation on the idea that the punishment should fit the crime of conviction.

The substantive provisions of the measure reinforce the message of the principal provisions, echoing the thought that forfeitures are a form of criminal punishment. They do so in two respects. First, section 10(3) of the measure prohibits forfeiture absent a criminal conviction: "No judgment of forfeiture of property in a civil forfeiture proceeding by the State or any of its political subdivisions shall be allowed or entered until and unless the owner of the property is convicted of a crime in Oregon or another jurisdiction[.]" Measure 3 (2000), § 10(3). Requiring a criminal conviction as a prerequisite to forfeiture would suggest to voters that the measure would make forfeiture part of the criminal process. Second, section 10(3) of the 2000 measure (as proposed) imposes a proportionality requirement between the value of

the forfeited property and the specific crime of conviction: "The value of the property forfeited under the provisions of this subsection shall not be excessive and shall be substantially proportional to the specific conduct for which the owner of the property has been convicted."[5] *Id*. That proportionality requirement reiterates the idea that, in Oregon, forfeiture is a punishment that must be tailored to a particular crime of conviction.

Statements in the voters' pamphlet would have emphasized the message of the measure's text: that approval of the measure would make forfeiture a component of criminal punishment for a conviction, and bar its use against innocent persons. As the statements recounted above show, the general purpose of the measure was to right the wrong of state and local governments using civil forfeiture to take the money and property of people who had not been convicted of crimes, something the measure proposed to accomplish by prohibiting forfeitures absent criminal conviction.

Further, as mentioned, one of the measure's opponents stated that "Measure 3 makes forfeiture criminal in nature," and identified some of the consequences of making forfeiture criminal in character. Official Voters' Pamphlet, General Election, Nov 7, 2000, 244. No statement for or against the measure refuted the assertion that the measure would make "forfeiture criminal in nature." Given the array of statements urging approval of the measure so as to restore the presumption of innocence and ensure that only guilty persons are subject to forfeitures, along with the unrefuted statement addressing the potential consequences of making forfeiture criminal, we are persuaded that Oregon voters most likely understood that, if they approved the measure, they would be making forfeiture a form of criminal punishment. That choice means that forfeiture proceedings governed by Article XV, section 10, implicate Fifth Amendment double jeopardy.

In arguing for a different conclusion, the county points to cases predating Article XV, section 10, and holding

---

[5] The 2008 amendments moved the proportionality principle from section 3 to section 7 of Article XV.

that Oregon's prior civil forfeiture scheme did not implicate double jeopardy. The county points further to the fact that many provisions of the civil forfeiture scheme laid out in ORS chapter 131A do not differ materially from the provisions of the prior civil forfeiture scheme held not to implicate double jeopardy. That means, in the county's view, that the current scheme also does not raise double jeopardy issues.

The county is correct that many aspects of civil forfeiture law have not changed in the years after those cases were decided. Something else, however, has. Since those cases were decided, Oregon voters recharacterized the nature of forfeiture in Oregon, and they did so in the constitution. As a result of the adoption of Article XV, section 10, forfeiture in Oregon, even when denominated as civil, bears little resemblance to the *in rem* forfeitures that the Supreme Court has held do not implicate double jeopardy. By generally requiring a person's criminal conviction as a prerequisite to the forfeiture of property, and by requiring that the value of any property forfeited be substantially proportional to the specific crime of conviction, Oregonians have effectively rejected historical *in rem* civil forfeitures—along with the underlying legal fiction that property itself can be guilty so as to allow the government to take it—and adopted *in personam* criminal forfeitures, or something very close to them. As we understand the Supreme Court's decisions on the matter, one consequence of that choice to shift the theory of forfeiture from one of guilty property to one of guilty person is that double jeopardy applies.

The county also points out that Article XV, section 10, allows for forfeitures of property of persons who do not have a conviction in some instances. In the county's view, that makes it inferable that Article XV, section 10, was not intended to be punitive but, instead, remedial.

The county's point is a fair one. Ultimately, though, it does not convince us that voters intended forfeitures under Article XV, section 10, to be remedial in nature. In the limited circumstances in which the government may obtain the forfeiture of property in the hands of a person without a conviction, the constitution requires that (1) someone have been convicted; (2) the property be connected to the crime;

and (3) the person possessing the property be morally culpable, because the person "took the property with the intent to defeat forfeiture" of the property, "knew or should have known that the property constituted proceeds or an instrumentality" of a crime, or "acquiesced in the criminal conduct" leading to the conviction. Or Const, Art XV, § 10(5). Additionally, even when the property is in the hands of a person without the conviction, the constitution still requires that any forfeiture be proportional to the crime of conviction. Or Const, Art XV, § 10(7). Together, those provisions all tend to suggest that voters intended for the forfeitures covered by Article XV, section 10, to be proportionate punishment for criminal conduct, by, in all instances, (1) requiring a conviction as a prerequisite of forfeiture; (2) requiring culpability connected to a conviction for forfeitures of property in the hands of someone who does not have a conviction themselves; and (3) requiring that any forfeiture be proportionate to the offense of conviction. Again, this conception of forfeiture bears little resemblance to the *in rem* forfeitures that the Supreme Court has held do not implicate double jeopardy.

For the foregoing reasons, we conclude that forfeitures subject to Article XV, section 10, of the Oregon Constitution are criminal in nature for purpose of the Double Jeopardy Clause of the Fifth Amendment. That is because we conclude that voters, in approving Article XV, section 10, most likely understood that, by approving the measure, they were making forfeiture a form of criminal punishment.

We note that we do not appear to be alone in reaching that conclusion. Notwithstanding its characterization of ORS chapter 131A forfeitures as "remedial" rather than "punitive," in ORS 131A.010, the legislature appears to have recognized that the character of forfeiture under Article XV, section 10, raises jeopardy issues; as noted, the legislature specifically addressed potential jeopardy issues in ORS 131A.265 and ORS 131A.270 by providing for stays and the consolidation of ORS chapter 131A forfeiture proceedings with criminal cases. That means that our conclusion that double jeopardy applies does not equate to a conclusion that forfeiture is not available; it simply means that forfeiture

proceedings may need to be consolidated with criminal proceedings as allowed by ORS 131A.270 so as to avoid jeopardy's bar.

Reversed and remanded.