82 November 21, 2024 No. 41

IN THE SUPREME COURT OF THE
STATE OF OREGON

YAMHILL COUNTY,
a political subdivision of the State of Oregon
and forfeiting agency, on behalf
of the Yamhill County Interagency Narcotics Team
(YCINT) seizing agency,
*Petitioner on Review,*

*v.*

REAL PROPERTY
COMMONLY KNOWN AS:
11475 NW PIKE ROAD, YAMHILL, OREGON,
YAMHILL COUNTY AND ANY RESIDENCE,
BUILDINGS, OR STORAGE FACILITIES
THEREON,
*Defendant in rem,*
*and*

Sheryl Lynn SUBLET,
*Respondent on Review.*

(CC 18CV37372) (CA A173574) (SC S070217)

On review from the Court of Appeals.*

Argued and submitted December 14, 2023.

C. Robert Steringer, Harrang Long, P.C., Portland, argued the cause and filed the briefs for petitioner on review. Also on the briefs was Erica R. Tatoian.

Zachary J. Stern, Zachary J. Stern, P.C., Salem, argued the cause and filed the brief for respondent on review.

Paul L. Smith, Deputy Solicitor General, Salem, filed the briefs for *amicus curiae* State of Oregon. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

_____

* Appeal from Yamhill County Circuit Court, Ladd J. Wiles, Judge. 324 Or App 412, 526 P3d 765 (2023).

Rebeca A. Plaza, Capitol Legal Services, Salem, filed the brief for *amici curiae* Association of Oregon Counties, City of Keizer, City of Salem, City of Springfield, City of Medford, League of Oregon Cities, and Oregon Narcotics Enforcement Association. Also on the brief was Aaron P. Hisel.

Rosalind M. Lee, Oregon Criminal Defense Lawyers Association, Eugene, filed the brief for *amicus curiae* Oregon Criminal Defense Lawyers Association. Also on the brief were Daniel C. Silberman and Stacy M. Du Clos; Gabe Newland and Aliza Kaplan, Portland, for *amicus curiae* Criminal Justice Reform Clinic at Lewis & Clark Law School; and Kelly Simon, Portland, for *amicus curiae* American Civil Liberties Union of Oregon.

Franz Bruggemeier, Oregon Justice Resource Center, Portland, filed the brief for *amici curiae* Oregon Resource Justice Center and National Police Accountability Project. Also on the brief were Lauren Bonds, Keisha James, and Eliana Machefsky, National Police Accountability Project, New Orleans, Louisiana.

Christian Zupancic, Zuplaw Law Firm, LLC., Seaside, filed the brief for *amicus curiae* Institute for Justice. Also on the brief was Wesley Hottot, Institute for Justice, Seattle, Washington.

Before Flynn, Chief Justice, and Duncan, Garrett, DeHoog, James, and Masih, Justices, and Walters, Senior Judge, Justice pro tempore. **

FLYNN, C.J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

_____

** Bushong, J., did not participate in the consideration or decision of this case.

**FLYNN, C.J.**

Oregon law allows local governments to acquire property that is connected to certain criminal conduct by bringing a civil forfeiture action against the property itself—a so-called *in rem* action. *See* ORS 131A.225 (authorizing and describing use of "civil forfeiture action in rem" for property subject to forfeiture). For the *in rem* action, no person is named as a defendant, but the forfeiting entity must make "reasonable efforts" to notify potential claimants "known to have an interest" in the property. ORS 131A.150(4). And if a claimant chooses to oppose the forfeiture, then the local government must prove that "a person has been convicted of a crime that constitutes prohibited conduct" (generally drug crimes and human trafficking crimes) and that the property to be forfeited is proceeds of, or an instrumentality of, either the crime for which the person has been convicted or another crime that is similar. ORS 131A.255; *see* ORS 131A.005(12) (defining "prohibited conduct"). *But see* ORS 131A.200(1) and ORS 131A.315 (permitting forfeiture without proof of conviction if no claimant appears to oppose the forfeiture). The statutory forfeiture process aligns with limitations that the Oregon Constitution imposes on the use of "civil forfeiture" by "the State or any of its political subdivisions." Or Const, Art XV, §10; ORS 131A.010(2) (specifying that "[a]ll forfeitures under the provisions of this chapter are subject to the limitations of section 10, Article XV of the Oregon Constitution").

The question in this case is whether civil forfeiture in Oregon is effectively a criminal penalty for purposes of the Double Jeopardy Clause of the Fifth Amendment, such that a civil forfeiture action is barred by—and bars—a separate criminal prosecution of the property's owner for the same prohibited conduct.[1] The arguments present a facial challenge to the overall civil forfeiture scheme, and we reject that challenge. We conclude that the civil forfeiture authorized by ORS chapter 131A does not facially trigger the protections of the Fifth Amendment's Double Jeopardy Clause.

---

[1] The federal Double Jeopardy Clause provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." US Const, Amend V.

# I.  BACKGROUND

In this civil forfeiture case, Yamhill County filed an *in rem* action against real property located on NW Pike Road, alleging that the defendant property had been used to facilitate prohibited conduct and that Sheryl Lynn Sublet (claimant), had asserted an interest in the property. Claimant appeared in the action and opposed the forfeiture on numerous grounds, including that the forfeiture action was barred under the federal Double Jeopardy Clause because claimant already had been prosecuted for the same prohibited conduct. The trial court rejected claimant's double jeopardy argument, a jury found in favor of the county, and the trial court entered a judgment forfeiting the defendant property to the county. But the Court of Appeals reversed. It agreed with claimant that the forfeiture implicates, and is barred by, the federal prohibition against double jeopardy. This court allowed the state's petition for review to determine whether the forfeiture proceeding implicates the federal Double Jeopardy Clause.

The arguments in this court present a narrow question, and we clarify what is not at issue. First, claimant does not contend that any provision of the state or federal constitution precludes the legislature from authorizing civil *in rem* forfeiture of property that is an instrumentality of "prohibited conduct." Second, she does not advance any argument under the state constitution—not under the double jeopardy clause contained in Article I, section 12, nor under any other provision. Third, as indicated above, claimant presents a facial challenge that the overall forfeiture scheme under Oregon law is criminal. Accordingly, the only question presented by this case is whether civil forfeiture actions under Oregon law place an owner of the property in "jeopardy" for purposes of the Fifth Amendment, in all instances, without regard to the individual circumstances of the particular case.[2]

---

[2] Under the "first things first" doctrine, "this court has frequently stated a preference for resolving disputes under state law, including the state constitution, if possible." *State v. Link*, 367 Or 625, 640, 482 P3d 28 (2021). Although we do not let the parties' choice of argument dictate whether we adhere to that doctrine, claimant's arguments have proceeded exclusively as a challenge under the federal constitution, and the Court of Appeals resolved this case as a matter of federal constitutional law. We allowed review to determine whether that decision

It is not a novel question. As the United States Supreme Court has emphasized, "[s]ince the earliest years of this Nation, Congress has authorized the Government to seek parallel *in rem* civil forfeiture actions and criminal prosecutions based upon the same underlying events." *United States v. Ursery*, 518 US 267, 274, 116 S Ct 2135, 135 L Ed 2d 549 (1996). And, in "a long line of cases," the Court "has considered the application of the Double Jeopardy Clause to civil forfeitures, consistently concluding that the Clause does not apply to such actions because they do not impose punishment." *Id*. This court reached the same conclusion when we last considered the application of the Double Jeopardy Clause to a civil forfeiture proceeding, in *State v. Selness*, 334 Or 515, 542, 54 P3d 1025 (2002).[3]

But the statutes that we considered in *Selness* have been replaced by the new civil forfeiture statutes set out in ORS chapter 131A, which the legislature adopted in 2009 to align with the new constitutional limitations that voters originally adopted in 2000 and then amended in 2008. *See* Or Const, Art XV, § 10 (describing limits on the government's ability to pursue "civil forfeiture"); Or Laws 2009, ch 78 (adopting provisions now set out at ORS chapter 131A). In this case, the Court of Appeals was persuaded that those changes to civil forfeiture in Oregon permit a different conclusion than this court reached in *Selness*. The court held that the voters who originally adopted Article XV, section 10, intended to make all forfeiture "criminal in nature for [the] purpose of the Double Jeopardy Clause of the Fifth Amendment" and, as a result, that a forfeiture proceeding under current Oregon law implicates that provision. *Yamhill County v. Real Property*, 324 Or App 412, 428, 526 P3d 765 (2023). We allowed review to consider whether the new constitutional or statutory provisions have converted civil forfeiture in Oregon to essentially a criminal punishment that places the property owner in "jeopardy" for purposes of the Fifth Amendment.

---

was correct and, thus, exercise our discretion to resolve this case under the federal constitution, leaving any state constitutional questions for another day.

[3] The defendants in *Selness* also argued that the forfeiture implicated the double jeopardy protections under Article I, section 12, of Oregon's constitution, and the opinion primarily is devoted to explaining why the forfeiture did not constitute "jeopardy" for purposes of Oregon law. 334 Or at 523-40.

## II.   DISCUSSION

The Fifth Amendment's Double Jeopardy Clause, among other things, prohibits a government from "'attempting a second time to punish [a person] criminally for the same offense.'" *Ursery*, 518 US at 273 (quoting *Witte v. United States*, 515 US 389, 396, 115 S Ct 2199, 132 L Ed 2d 351 (1995)). Under limited circumstances, the Supreme Court has held that a civil action to punish a person implicates the Double Jeopardy Clause, but the Court consistently has drawn "a sharp distinction" for double jeopardy purposes between so-called *in personam* civil penalty actions and *in rem* civil forfeiture actions brought against property itself. *Id.* at 275. The distinction is captured by a "remarkably consistent theme" in the Court's cases: "*In rem* civil forfeiture is a remedial civil sanction, distinct from potentially punitive *in personam* civil penalties such as fines, and does not constitute a punishment under the Double Jeopardy Clause." *Id.* at 278; *see Various Items of Personal Property v. United States*, 282 US 577, 580-81, 51 S Ct 282, 75 L Ed 558 (1931) (explaining distinction between *in rem* civil forfeitures and *in personam* civil penalties).

A.   *A "Remarkably Consistent Theme":* In Rem *Civil Forfeitures Are Not Punishment*

The Court first drew that "sharp distinction" in *Various Items*, in which the Court considered whether an *in rem* civil forfeiture action, which followed the owner's prior criminal conviction for the same actions, was barred by the Fifth Amendment. 282 US at 581. And in *Ursery*, the Court highlighted the distinction between *in rem* and *in personam* civil proceedings by pointing to *United States v. La Franca*, 282 US 568, 51 S Ct 278, 75 L Ed 551 (1931)—another decision that was issued the same day as *Various Items*—in which it had held that a civil, *in personam*, action against a taxpayer to recover taxes *was* "'punitive in character and barred by a prior conviction of the defendant for a criminal offense involving the same transactions.'" *Ursery*, 518 US at 275 (quoting *Various Items*, 282 US at 580). By contrast, the Court emphasized, the action in *Various Items* was "'a proceeding *in rem* to forfeit property used in committing an offense'" and did not implicate the prohibition against double

jeopardy because an *in rem* forfeiture against the property itself "'*is no part of the punishment for the criminal offense.*'" *Id*. (quoting *Various Items*, 282 US at 580-81 (emphasis in *Ursery*)).

The line drawn by the Court in *Various Items* is not between forfeiture and other sanctions, but between *in personam* forfeiture actions against a property's owner and *in rem* forfeitures against property. *See Dobbins' Distillery v. United States*, 96 US 395, 399-400, 24 L Ed 637 (1877) (describing the two types of forfeitures). In "the Middle Ages and at common law[,]" an *in personam* forfeiture action was considered "part of the punishment imposed for felonies and treason." *United States v. Bajakajian*, 524 US 321, 332, 118 S Ct 2028, 141 L Ed 2d 314 (1998). An *in rem* civil forfeiture, by contrast, "has not historically been regarded as punishment, as [the Court has] understood that term under the Double Jeopardy Clause." *Ursery*, 518 US at 291. In fact, as the Court observed in *Ursery*, "[h]ad the Court in *Various Items* found that [an *in rem*] civil forfeiture could constitute a 'punishment' under the Fifth Amendment, its holding would have been quite remarkable." 518 US at 275. The reason is that, "at common law, not only was it the case that a criminal conviction did not *bar* a civil forfeiture, but, in fact, the civil forfeiture could not be *instituted* unless a criminal conviction had already been obtained." *Id*. (emphases in original).

An early rationale given for the rule that *in rem* forfeitures do not implicate the Double Jeopardy Clause was that "[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient." *Various Items*, 282 US at 581. The Court has also pointed to the nature of an *in rem* action, in which jurisdiction is "dependent upon seizure of a physical object," rather than on acquiring jurisdiction over a person. *United States v. One Assortment of 89 Firearms*, 465 US 354, 363, 104 S Ct 1099, 79 L Ed 2d 361 (1984). Such forfeitures, the Court has observed, are structured "to be impersonal by targeting the property itself." *Ursery*, 518 US at 289. The Court also has attributed the rule to an understanding that civil *in rem*

forfeitures are "remedial in nature," in a way that criminal punishment is not. *89 Firearms*, 465 US at 366. Remedial justifications that have been advanced for civil forfeiture include preventing property from being used for illegal purposes, removing potentially dangerous items from circulation, ensuring that persons do not profit from their illegal acts, and making criminal activity unprofitable. *See Ursery*, 518 US at 290-91 (highlighting that forfeiture at issue served "nonpunitive goals" of ensuring that property is not used for illegal purposes and, in the case of proceeds, ensuring "that persons do not profit from their illegal acts"); *89 Firearms*, 465 US at 364 (emphasizing that the civil forfeiture of firearms "further[ed] broad remedial aims," including "discouraging unregulated commerce in firearms" and "[k]eeping potentially dangerous weapons out of the hands of unlicensed dealers"); *Bennis v. Michigan*, 516 US 442, 452, 116 S Ct 994, 134 L Ed 2d 68 (1996) (explaining that "[f]orfeiture of property prevents illegal uses * * * by imposing an economic penalty, thereby rendering illegal behavior unprofitable" (internal quotation marks omitted)); *see also State v. Curran*, 291 Or 119, 127-28, 628 P2d 1198 (1981) (explaining traditional purpose of *in rem* forfeiture as "not merely to punish criminal activity but to make it unprofitable" by "removing equipment necessary to the carrying on of the illegal activity and recouping some of the costs of law enforcement," as well as generally deterring criminal activity).

Regardless of the rationale, however, the Court's cases over the last century have continued to adhere to the "remarkably consistent theme" that "*[i]n rem* civil forfeiture is a remedial civil sanction, * * * and does not constitute a punishment under the Double Jeopardy Clause." *Ursery*, 518 US at 278. Four decades after *Various Items*, the Court next revisited the theme in the context of a double jeopardy challenge to the civil forfeiture of jewels, under the Tariff Act of 1930, after the owner had been acquitted on charges of smuggling the jewels into the country. *One Lot Emerald Cut Stones v. United States*, 409 US 232, 233, 93 S Ct 489, 34 L Ed 2d 438 (1972). The brief *per curiam* opinion observed that "Congress could and did order both civil and criminal sanctions" for violations of the Act and that, "[i]f for no other

reason, the forfeiture is not barred by the Double Jeopardy Clause of the Fifth Amendment because it involves neither two criminal trials nor two criminal punishments." *Id*. at 235-36. *Ursery* explains that the forfeitures in *One Lot* "were not criminal punishments because they did not impose a second *in personam* penalty for the criminal defendant's wrongdoing." 518 US at 276. In other words, the Court has—without exception—held that the protections of the Double Jeopardy Clause do not apply to *in rem* civil forfeiture actions, without regard to whether the forfeiture comes before or after a related criminal prosecution, and without regard to whether the prosecution ends with an acquittal or conviction.

But the Court's most recent decisions have settled on a rule for civil forfeiture that arguably allows for at least the possibility that even an *in rem* forfeiture labeled "civil" might, under some circumstances, implicate double jeopardy protections:

> "'Unless the forfeiture sanction was intended as punishment, so that the proceeding is essentially criminal in character, the Double Jeopardy Clause is not applicable. The question, then, is whether [the] *** forfeiture proceeding is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial.'"

*Ursery*, 518 US at 277 (quoting *89 Firearms*, 465 US at 362). The Court's application of that rule provides no examples of what could make an *in rem* forfeiture "essentially criminal in character" but, instead, provides multiple examples of what does not.

B. *The Court's Two-Part Inquiry*

To answer the question at the heart of that rule, the Court in *89 Firearms* distilled a two-part inquiry that "provides a useful analytical tool" for determining whether a forfeiture proceeding is punishment that implicates the Double Jeopardy Clause. *Ursery*, 518 US at 288. Under that two-part inquiry, the Court first considers whether those who created the forfeiture proceeding intended it to be criminal or civil. *Id.* The Court next considers whether the proceeding, even if intended as civil, is "so punitive in fact as to

'persuade [the Court] that the forfeiture proceeding[s] may not legitimately be viewed as civil in nature,' despite" the intent. *Id.* (quoting *89 Firearms*, 465 US at 366). The Court has emphasized, however, that, "[t]hough the two-part analytical construct employed in *89 Firearms* was more refined, perhaps, than that we had used over 50 years earlier in *Various Items*, the conclusion was the same in each case: *In rem* civil forfeiture *** does not constitute a punishment under the Double Jeopardy Clause." *Ursery*, 518 US at 278.

1.  *Intended to be criminal or civil*

As both *Ursery* and *89 Firearms* make clear, the question of intent focuses primarily on the text of the authorizing legislation and is significantly informed by whether the text creates a civil *in rem* proceeding. Indeed, the Supreme Court has consistently described the question as one of statutory construction that focuses on the procedural mechanisms specified in the authorizing legislation, in addition to any clear evidence of the "aims" of those who authorized the forfeiture. *Ursery*, 518 US at 277; *89 Firearms*, 465 US at 363-64; *see One Lot*, 409 US at 237 ("The question of whether a given sanction is civil or criminal is one of statutory construction.").

For example, in *89 Firearms*, the government had seized a collection of weapons from the owner's home and, after the owner was acquitted of illegally dealing in firearms without a license, the federal government brought an *in rem* forfeiture action against the weapons pursuant to a federal statute that authorized seizure and forfeiture of "'any firearm or ammunition involved in or used or intended to be used in'" violations of certain federal laws. 465 US at 355-56; *id.* at 356 n 2 (quoting 18 USC § 924(d)). The Court identified the clearest indication of Congressional intent in the "distinctly civil procedures" that the statute specified for enforcing forfeitures under the statute. *Id.* at 363. The Court pointed in particular to the statutory requirement that "an action to enforce a forfeiture 'shall be in the nature of a proceeding *in rem*'" and reiterated the theme, mentioned above, that "actions *in rem* have traditionally been viewed as civil proceedings, with jurisdiction dependent upon seizure of a physical object." *Id.* at 363 (quoting 26 USC § 7323). In

addition, the Court identified as significant the fact that the statutory framework authorized summary proceedings for forfeitures of low-value property. *Id*.

"Finally," the Court reasoned, the authorized forfeiture furthered "broad remedial aims" that had motivated Congress to pass the legislation, including "by discouraging unregulated commerce in firearms and by removing from circulation firearms that have been used or intended for use outside regulated channels of commerce." *Id*. at 364; *see id*. (explaining that "Congress sought to 'control the indiscriminate flow' of firearms and to 'assist and encourage States and local communities to adopt and enforce stricter gun control laws'" (quoting HR Rep No 1577, 90th Cong, 2d Sess, *reprinted in* 1968 USCCAN 4410, 4413)).

The Court employed that approach again in *Ursery*, in which it considered consolidated cases, one in which the circuit court had held that a prior civil forfeiture presented a double jeopardy bar to the owner's subsequent criminal prosecution, and one in which the circuit court had held that the owner's prior criminal conviction presented a double jeopardy bar to the civil forfeiture action. 518 US at 271-72. As it had in *89 Firearms*, the Court concluded that Congress's intent was "most clearly demonstrated" by the "distinctly civil procedures" that Congress had established for enforcing forfeitures under the statutes—primarily the fact that Congress had designated the forfeiture as "civil" and had specified that the forfeiture would proceed "*in rem*." *Id*. at 288-89 (quoting *89 Firearms*, 465 US at 363). The Court secondarily pointed to various other "distinctly civil procedures" that Congress had incorporated, including that forfeiture could proceed without actual notice to the claimant, that the seized property was subject to forfeiture through a summary procedure if no claim was filed, and that the government's burden of proof was low—there, probable cause. *Id*.

　　2.　*Effect of the forfeiture proceeding*

The Supreme Court has cautioned that, when a forfeiture is intended to serve a "remedial civil sanction rather than a criminal punishment," only "the clearest proof that

the purpose and effect of the forfeiture are punitive will suffice to override [the legislature's] manifest preference for a civil sanction." *89 Firearms*, 465 US at 364-65 (internal quotation marks omitted); *see Ursery*, 518 US at 290 (explaining that Court found "little evidence, much less the clearest proof that we require" that forfeiture proceedings under the statute were "so punitive in form and effect as to render them criminal despite Congress' intent to the contrary" (internal quotation marks omitted)).

The Court in other contexts has identified a nonexclusive list of considerations that are "relevant to the question whether a proceeding is criminal." *Ursery*, 518 US at 292 (citing *United States v. Ward*, 448 US 242, 247-48, 247 n 7, 249, 100 S Ct 2636, 65 L Ed 2d 742 (1980), as "listing relevant factors and noting that they are neither exhaustive nor dispositive"); *89 Firearms*, 465 US at 365 (citing *Kennedy v. Mendoza-Martinez*, 372 US 144, 168-69, 83 S Ct 554, 9 L Ed 2d 644 (1963), which lists the same factors).[4] But the Court's analysis in *Ursery* and *89 Firearms* illustrates that, in the context of a forfeiture, determining whether proceedings are so punitive as to be deemed criminal turns largely on the same considerations that also persuaded the Court that Congress intended to create a civil sanction.

"Most significant" to the Court in *Ursery* was the fact that the forfeiture statutes, "while perhaps having certain punitive aspects, serve important nonpunitive goals." 518 US at 290. That factor tracks one of the listed considerations—whether the sanction "may rationally be connected" to "an alternative purpose"—but also repeats one of the considerations that the Court has pointed to as evidence of Congressional intent. *See 89 Firearms*, 465 US at 364 (identifying statute's furtherance of "broad remedial aims" in concluding that Congress intended "a remedial civil sanction

---

[4] The nonexhaustive list of factors in *Ward* is taken from *Mendoza-Martinez*:

"'[W]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote the traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned.'"

*Ward*, 448 US at 247 n 7 (quoting *Mendoza-Martinez*, 372 US at 168-69).

rather than a criminal punishment"). Another factor asks whether the sanction has historically been regarded as a punishment, and, as the Court highlighted in *Ursery*, "it is absolutely clear that *in rem* civil forfeiture has not historically been regarded as punishment, as we have understood that term under the Double Jeopardy Clause." 518 US at 291. Yet another factor asks whether the sanction requires a finding of *scienter*, which the Court disposed of by citing the procedural mechanism that permitted forfeiture of property "even if no party files a claim to it and the Government never shows any connection between the property and a particular person." *Id*. at 291-92.

Ultimately, the Court's cases offer little guidance about what—if anything—*could* constitute "the clearest proof" that an *in rem* civil forfeiture is "so punitive in form and effect as to render [it] criminal despite" a contrary intent, but they offer guidance on what does *not* suffice. First, although promoting a purpose of deterrence—one of the traditional "aims of punishment"—can suggest that a sanction is criminal, *Ursery* makes clear that the factor is not meaningful when evaluating a sanction of forfeiture, because forfeiture "serves a deterrent purpose distinct from any punitive purpose." *Id*. at 292 (internal quotation marks omitted). Nor is it relevant that a forfeiture statute includes an "innocent owner" exception—which helps limit the sanction to only culpable owners—"without more indication of an intent to punish." *Id*. Finally, although tying a sanction to criminal activity can be some indication that the sanction is a criminal penalty, "[b]y itself, the fact that a forfeiture statute has some connection to a criminal violation is far from the 'clearest proof' necessary to show that a proceeding is criminal." *Id*.; *see 89 Firearms*, 465 US at 366 (in explaining that it was not sufficient that the proscribed behavior was also a crime, emphasizing "the forfeiture remedy cannot be said to be co-extensive with the criminal penalty").

C.  *The Two-Part Inquiry Applied to Civil Forfeiture Under Oregon Law*

Oregon, similarly, has a long history of authorizing civil *in rem* forfeiture through proceedings that are in addition to any criminal prosecution for the same conduct. *See,*

*e.g.*, *State v. 1920 Studebaker Touring Car*, 120 Or 254, 256, 251 P 701 (1926) (describing Oregon's prohibition-era law authorizing *in rem* forfeiture of boats and vehicles used to unlawfully transport "intoxicating liquor"); Or Laws 1949, ch 415, §§ 2-3 (authorizing forfeiture of "premises" on which the owner or operator engaged in the unlawful service of "alcoholic liquor containing more than 14 per cent of alcohol by volume," if "any person" was convicted for a violation of the Act). And this court, in *Selness*, employed the Supreme Court's two-part inquiry to determine that Oregon's civil *in rem* forfeiture scheme prior to 2000 was "neither punishment nor criminal" for purposes of the Fifth Amendment's Double Jeopardy Clause. *Selness*, 334 Or at 542 (internal quotation marks omitted).

1.    *The two-part inquiry as applied in* Selness

Although both *Ursery* and *89 Firearms* analyzed forfeiture proceedings authorized by federal statutes, and thus, framed the first inquiry in terms of the intent of "Congress," the Court's focus on the text of the authorizing legislation is precisely how we identified the legislature's intent in *Selness. See* 334 Or at 541 (describing statutory inquiry). And it is how we answer all questions of enactor-intent, whether for a statute or constitutional provision. In both instances, we look to the text of the enactment as the best evidence of the intent of those who adopted it. *See State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009) (explaining that "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes" (internal quotation marks omitted)); *Priest v. Pearce*, 314 Or 411, 415-16, 840 P2d 65 (1992) (describing that method for analyzing original constitutional provisions).

The double jeopardy challenge in *Selness* arose in the context of criminal prosecutions for drug activity that coincided with an *in rem* forfeiture action against the defendants' home pursuant to the civil forfeiture statutes in effect at the time.[5] 334 Or at 518. Although the defendants were

_____

[5] The civil forfeiture statutes at issue in *Selness* had been adopted in 1989 and amended in 1993. Oregon Laws 1989, ch 791; Oregon Laws 1993, ch 699. The opinion notes that those statutes had been incorporated into ORS chapter 475A,

aware of the forfeiture proceeding, they did not file a claim or otherwise appear. *Id.* at 521. Shortly after the defendants had been arraigned on charges of possessing, manufacturing, and delivering a controlled substance, the City of Portland obtained a default judgment of forfeiture based on the allegation that the defendants had used their home to facilitate the same "prohibited conduct" on which the defendants' pending criminal charges were based. *Id.* The defendants then moved to dismiss the pending criminal charges, contending that the earlier forfeiture barred the prosecutions under the Fifth Amendment Double Jeopardy Clause. *Id.* at 521.[6] This court first explained that it was considering only whether "the overall forfeiture scheme" created a proceeding that implicated double jeopardy, because the defendants had waived any argument that "as applied to them, the forfeiture" proceeding counted as "jeopardy." *Id.* at 523-24. And the court concluded that the legislature had created a forfeiture proceeding that was "neither 'punishment' nor criminal for purposes of the [Fifth Amendment's] Double Jeopardy Clause." *Id.* at 542 (quoting *Ursery*, 518 US at 292).

*Selness* reached that conclusion by analyzing the statutory framework under *Ursery*'s two-part inquiry, which we highlighted as employing a rebuttable presumption that can be overcome only by the "clearest proof":

> "'That a forfeiture is designated as civil by Congress and proceeds *in rem* establishes a presumption that it is not subject to double jeopardy. *** Nevertheless, where the 'clearest proof' indicates that an *in rem* civil forfeiture is 'so punitive either in purpose or effect' as to be equivalent to a criminal proceeding, that forfeiture may be subject to the Double Jeopardy Clause.'"

*Id.* at 541 (quoting *Ursery*, 518 US at 289 n 3).

Employing that analytical framework, this court concluded that "[c]learly, the forfeiture scheme provided by [the statutes at issue] satisfies the first step" of the *Ursery*

---

but, for reasons that the court did not explain, it referred to the statutory provisions by their Oregon Laws citations throughout the opinion. 334 Or at 518 n 2.

[6] The defendants in *Selness* also argued that the forfeiture implicated the double jeopardy protections under Oregon's constitution, Article I, section 12, and the opinion primarily is devoted to explaining why the forfeiture did not constitute "jeopardy" for purposes of Oregon law. 334 Or at 523-40.

analysis. *Id*. at 541. Like the federal forfeiture statutes at issue in *Ursery* and *89 Firearms*, the forfeiture statute at issue in *Selness* "repeatedly refer[ed] to *civil* forfeiture[,]" and specified that the forfeiture proceed through an *in rem* action. *Id*. at 536 (emphasis in original). In addition, the statutes expressly articulated an intent that "any remedy under this Act is intended to be remedial and not punitive" and suggested several remedial purposes: "to render drug manufacture and trafficking activities unprofitable by confiscating the proceeds, to render those activities more difficult by confiscating tools and other property that facilitate the activities, and to provide resources to governments that enforce drug trafficking laws." *Id*. at 536, 538. This court reasoned that, "[l]ike the federal statute" in *Ursery*, the Oregon forfeiture statute "announces, on its face, the legislature's intent that it be remedial and nonpunitive." *Id*. at 541-42.

Moving to the second step of the Supreme Court's inquiry, this court emphasized that the defendants had not "pointed to anything in the statutory scheme that would suggest that they might obtain a different outcome at the second step of the *Ursery* analysis." *Id*. at 542. "Ultimately," this court concluded, "the forfeiture scheme provided" under Oregon law was "indistinguishable, for purposes of the present analysis, from the forfeiture scheme that the *Ursery* court held to be civil." *Id*. Thus, "like the forfeiture scheme that was at issue in" *Ursery*, the Oregon forfeiture scheme at issue in *Selness* was "'neither 'punishment' nor criminal for purposes of the [Fifth Amendment's] Double Jeopardy Clause.'" *Id*. (quoting *Ursery*, 518 US at 292).

2.  *The two-part inquiry applied to Oregon's current forfeiture law*

As in *Selness*, claimant has not argued that any particular aspects of the forfeiture proceeding cause the proceeding to count as "jeopardy" as applied to claimant. Thus, as in *Selness*, the question before us is whether "the overall forfeiture scheme [under current Oregon law], and not just its particular effect in [claimant's] case, is criminal" such that a forfeiture proceeding under that law necessarily places an owner in jeopardy for purposes of the Fifth

Amendment. 334 Or at 524. Our decision in *Selness* significantly informs our analysis of that question, but *Selness* examined a different civil forfeiture law than the statute at issue in this case. We, therefore, must consider whether differences between the civil forfeiture law that we analyzed in *Selness* and the current forfeiture law at issue here have converted civil forfeiture in Oregon to a sanction that the United States Supreme Court would consider to be essentially criminal punishment subject to the Double Jeopardy Clause. And because we are not resolving an as-applied argument under that provision, we must consider the entirety of the current forfeiture scheme. To provide context for the parties' arguments and our analysis, we turn first to the changes to Oregon forfeiture law since *Selness*.

   a.   Evolution of *in rem* forfeiture in Oregon

   The first change came while this court was considering the challenge to the 1989 forfeiture law at issue in *Selness*, when voters in 2000 adopted Ballot Measure 3, which was known as "The Oregon Property Protection Act of 2000." That measure added to the Oregon Constitution several substantive limitations on the "forfeiture of property in a civil forfeiture proceeding," and announced as a general principle that a person's property should not be forfeited to the government "unless and until that person is convicted of a crime involving the property." Or Const, Art XV, § 10(2), (3) (2000).[7] The passage of Measure 3 prompted legal challenges and, ultimately, amendments to Article XV, section 10, and legislative action.

   Initially, the legal challenges to Measure 3 appeared to succeed, when the Court of Appeals declared the measure void under Article 17, section 1, of the Oregon Constitution, for changing multiple constitutional provisions in a single measure. *See Lincoln Interagency Narcotics Team v. Kitzhaber*, 188 Or App 526, 554, 72 P3d 967 (2003), *rev'd*, 341 Or 496, 145 P3d 151 (2006) (so holding). Although this court ultimately reversed the decision of the Court of Appeals, in

---

[7] Voters had adopted Measure 3—the provisions of which became the 2000 version of Article XV, section 10—while the *Selness* case was pending in this court, and the effect of the constitutional provisions on the existing civil forfeiture framework was not at issue in that case.

the intervening vacuum, legislators adopted changes to the forfeiture statutes. Or Laws 2005 ch 830, §§ 30-35. Those changes incorporated the principle underlying Measure 3, that forfeiture generally should be limited to the property of a person who has been convicted of a crime, but added exceptions to that general rule that are similar to those found under the current law. *Id*. § 30. In that same bill, the legislature created a process for criminal forfeiture, as "a remedy separate and apart from any other criminal penalty and from civil forfeiture or any other civil penalty." *Id*.§ 2; *see also id*. §§ 1-18 (setting out the criminal forfeiture provisions of the 2005 Act that are now codified at ORS chapter 131A).

After this court held that Measure 3 had validly added civil forfeiture protections to the Oregon Constitution, *Lincoln Interagency Narcotics Team*, 341 Or 496, the legislature agreed on proposed amendments to Article XV, section 10, which it referred to the voters as Ballot Measure 53 (2008). SJR 18 (2007). In addition to making nonsubstantive organizational changes, the proposed amendments, which the voters approved, significantly modified the forfeiture limitations adopted under Measure 3, including by modifying the statement of principles to reflect the proposition that the property of a person "generally" should not be forfeited unless that person has been convicted of a crime and by expanding the circumstances under which property could be forfeited without a conviction of the owner. *Compare* Or Const, Art XV, § 10(3) (2000),[8] *with* Or Const, Art XV, § 10(2), (5) (2008).[9] In addition, the amendments modified what had been a requirement of proof by "clear and convincing evidence" in almost every case and modified the requirement that forfeited property must be proceeds or an instrumentality of the crime of conviction. *Compare* Or Const, Art XV, § 10(3) (2000), *with* Or Const, Art XV, § 10(3)(c), (d), (4), (6) (2008).

---

[8] Under the 2000 version of Article XV, section 10, the exceptions to the requirement that the owner must have been convicted of a crime were limited to persons who "took the property or the interest with the intent to defeat the forfeiture" and property for which "no person claims an interest in the seized property or if the property is contraband." Oregon Const, Art XV, § 10(4), (5) (2000).

[9] The provisions of Article XV, section 10, have not been amended since the passage of Measure 53 in 2008. Thus, except for references to Article XV, section 10 (2000), all references are to the current constitutional provision.

After the voters adopted the amendments to Article XV, section 10, through their approval of Measure 53, the legislature took up the task of crafting our current statutory framework for civil forfeiture. The legislature in 2009 adopted the provisions set out in ORS chapter 131A as a new, comprehensive statutory framework to govern civil forfeiture. *See* Or Laws 2009, ch 78, §2 (specifying that the legislature adopted provisions of the chapter to be "the sole and exclusive law of the state governing civil forfeiture of real and personal property based on prohibited conduct").

The provisions of ORS chapter 131A govern all "civil forfeiture of real and personal property based on prohibited conduct" and expressly incorporate "the limitations of section 10, Article XV of the Oregon Constitution." ORS 131A.010(2). In explaining the reason for the new civil forfeiture law, the legislature included findings that "[t]ransactions involving property subject to civil forfeiture under this chapter escape taxation" and that "[g]overnments attempting to respond to prohibited conduct require additional resources." ORS 131A.010(1)(b), (c). It also specified that "[t]he application of any remedy under this chapter is remedial and not punitive." ORS 131A.010(5).

Those statutes authorize a "civil forfeiture action in rem" against property that has some connection to "prohibited conduct"—generally defined as drug crimes and human trafficking crimes. ORS 131A.225(1); ORS 131A.005(12). The connection extends to proceeds of "prohibited conduct," personal property "used to facilitate prohibited conduct," and real property "that is used in any manner, in whole or part, to commit or facilitate prohibited conduct." *See* ORS 131A.020 (describing property that is subject to forfeiture under ORS chapter 131A).

The statutes specify that the "civil forfeiture action in rem," is initiated by filing a complaint that need only allege "that there is probable cause for seizure of the property or that a court order was issued." ORS 131A.225(1), (4). Upon commencement of the action, the seizing entity must also serve the summons and the complaint, in the manner required by the Rules of Civil Procedure, "on all persons known to have an interest in the property." ORS 131A.230.

And a person who intends to assert an interest in the property generally "must file a responsive pleading as provided in the Oregon Rules of Civil Procedure." ORS 131A.235.

The procedural mechanisms contemplate that actual notice to interested persons is not always necessary and specify that forfeiture can proceed through a summary *ex parte* or default procedure, without proof of a conviction, if no claim or responsive pleading is filed. *See* ORS 131A.200(1) (providing that the agency may seek an *ex parte* forfeiture judgment if no timely claim to the property was filed and no person is "known to have an interest, other than a person who is believed by the forfeiting agency to have engaged in prohibited conduct"); ORS 131A.315 (providing circumstances for a default forfeiture judgment).

If a forfeiture complaint is contested, then the entity seeking forfeiture must prove only that "a person has been convicted of a crime that constitutes prohibited conduct" and that the property is either proceeds or an instrumentality of "the crime for which the person has been convicted" or "one or more other crimes similar to the crime for which the person was convicted." ORS 131A.255(1). But the statutes also contemplate that the person claiming an interest in the property may not necessarily be the person who was convicted of a crime. *See* ORS 131A.255(2) (describing additional elements of proof when a claimant is not the person convicted). If a person claiming the property is not the person who was convicted of a crime, then the forfeiting agency also must prove that the claimant "[t]ook the property with the intent to defeat forfeiture," "[k]new or should have known that the property was proceeds of prohibited conduct," or "[a]cquiesced in the prohibited conduct." ORS 131A.255(2); *see also* ORS 131A.255(4) (explaining that "a claimant shall be considered to have acquiesced in prohibited conduct if the claimant knew of the prohibited conduct and failed to take reasonable action under the circumstances to terminate the prohibited conduct or prevent use of the seized property to facilitate the prohibited conduct").

The forfeiting agency's standard of proof in a contested action varies, depending on the type of property, but in all cases it is one of the standards associated with civil

proceedings, rather than the traditional criminal standard of "beyond a reasonable doubt." *See Apprendi v. New Jersey*, 530 US 466, 477, 490, 120 S Ct 2348, 147 L Ed 2d 435 (2000) (emphasizing that due process requires proof "beyond a reasonable doubt" of every element of a crime and facts that enhance the sentence for a crime). To forfeit real property, the agency must prove the specified elements by clear and convincing evidence, but, to forfeit personal property, the agency must prove the elements only by a preponderance of the evidence. ORS 131A.255(3); Or Const, Art XV, § 10(6) (for personal property, requiring proof by preponderance of evidence and, for real property, clear and convincing evidence). And for cash, weapons, or negotiable instruments, if the agency establishes that the items "were found in close proximity to controlled substances or to instrumentalities of prohibited conduct," then the agency bears no burden of proof as to the remaining elements; instead, the person claiming the items bears the burden to prove that the cash, weapons, or negotiable instruments are *not* proceeds or instrumentalities of prohibited conduct. ORS 131A.255(5).

   b. Applying the Court's analytical framework to ORS chapter 131A

   As described above, to determine whether the county's civil forfeiture action violated claimant's rights under the Fifth Amendment's Double Jeopardy Clause, we employ the two-part inquiry articulated in *Ursery*, informed by *Selness*'s application of that analysis to Oregon forfeiture law.

   According to the county, the new constitutional limitations, and the new statutory framework incorporating those limitations, have retained an overall forfeiture scheme that is neither intended to be criminal punishment nor in effect the equivalent of criminal punishment for purposes of the Double Jeopardy Clause of the Fifth Amendment. Therefore, the county urges this court to reach the same conclusion that we reached regarding the proceeding in *Selness*.

   Claimant disagrees. She contends that the voters that initially adopted constitutional limitations on civil forfeiture intended forfeiture proceedings in Oregon to be

criminal and punitive. She also argues that, regardless of intent, civil forfeiture in Oregon is "so punitive in effect as to constitute criminal punishment," thus implicating federal double jeopardy prohibitions.[10]

As we will explain, we reach the same conclusion about the current civil forfeiture framework that we reached when examining the forfeiture at issue in *Selness*: "[T]he forfeiture scheme [under current Oregon law] is 'neither punishment nor criminal for purposes of the [Fifth Amendment's] Double Jeopardy Clause.'" *Selness*, 334 Or at 542 (quoting *Ursery*, 518 US at 292 (third brackets in *Selness*)).

Turning first to whether the current forfeiture sanction is intended to serve a criminal purpose, it is significant that the text of the current constitutional and statutory provisions includes the same indications that, in *Selness*, persuaded us that the statute demonstrated, "on its face, the legislature's intent that it be remedial and nonpunitive." *See* 334 Or at 541-42. Most significantly, as in *Selness*, the legislature again authorized forfeiture that proceeds through the mechanism of an *in rem* action, a mechanism that the constitutional limitations do not prohibit. ORS 131A.225(1); Or Const, Art XV, § 10. In other words, Oregon law has "specifically structured these forfeitures to be impersonal by targeting the property itself." *Ursery*, 518 US at 289. In addition, references to the proceeding as a "civil forfeiture" pervade both ORS chapter 131A and Article XV, section 10. Thus, as in *Selness*, current forfeiture law "announces, on its face, the legislature's intent that it be remedial and nonpunitive." 334 Or at 541-42; *see* ORS 131A.010(5) (stating that "any remedy under this chapter is remedial and not punitive").

As we explained in *Selness*, those designations of the sanction as a "civil forfeiture" that proceeds as an "*in rem*" action, alone, satisfy the first *Ursery* inquiry and give rise to "a presumption that" the proceedings under current forfeiture law are not subject to federal double jeopardy

---

[10] A substantial portion of claimant's brief also raises reasons why, in her view, civil forfeiture is bad policy for Oregon. But we decline to consider those arguments. The only question before this court is whether this forfeiture proceeding violated claimant's federal right against double jeopardy. *See State v. Atkinson*, 298 Or 1, 6, 688 P2d 832 (1984) (explaining that this court is "a judicial, not a legislative body," and that it "is not our function to decide" matters of policy).

prohibitions. *See* 334 Or at 541 (describing significance that *Ursery* assigned to those designations). Indeed, the legislature's designation of a "civil" and "*in rem*" forfeiture proceeding in ORS chapter 131A has heightened significance because we presume that the legislature was aware of the emphasis that both *Ursery* and *Selness* assigned to those designations. *See OR-OSHA v. CBI Services, Inc.*, 356 Or 577, 593, 341 P3d 701 (2014) (explaining that a statute's context includes judicial "decisions that existed at the time that the legislature enacted" the statute at issue). Those cases make it clear that the most significant characteristics of a forfeiture that is civil and remedial, and thus not criminal punishment for purposes of the Double Jeopardy Clause, are that the forfeiture is effectuated through an *in rem* action that has been given a "civil" designation.

The legislature could have departed from either characteristic when it adopted the new comprehensive forfeiture framework—indeed, when the legislature adopted ORS chapter 131A, Oregon law already included statutes authorizing and specifying procedures for "criminal forfeiture." *See* Or Laws 2005, chapter 830 (codified at ORS 131.550 - 131.604). But the legislature, instead, chose to authorize a separate *in rem* civil forfeiture proceeding that "does not affect the application of any other civil or criminal remedy under any other provision of law." ORS 131A.010(5). Those key characteristics of the statute were enough to persuade us in *Selness* that the statutory scheme "[c]learly" established that the legislature intended the forfeiture to be civil and remedial. 334 Or at 541. And they are enough to persuade us here as well, but other provisions of the forfeiture laws reinforce that conclusion.[11]

First, the legislature's intent to authorize a remedial, civil sanction is confirmed by the statute's express

---

[11] We do not suggest that the legislature, by applying a "civil, *in rem*" label, can preclude a court from later concluding that a forfeiture action implicates double jeopardy protections. Indeed, despite adopting characteristics that create a "presumption" under federal law that the forfeiture does not implicate double jeopardy, *see Selness*, 334 Or at 541, the legislature apparently recognized that a court might eventually conclude otherwise—under state or federal law. That recognition is reflected in ORS 131A.265 and 131A.270, which provide for stays or consolidation of related criminal and civil forfeiture actions and which specify that a defendant's motion to stay a forfeiture or any opposition by the defendant to consolidation "constitutes a waiver of double jeopardy" by the defendant.

indications of a nonpunitive purpose. In *Selness*, this court pointed to the legislative findings that the forfeiture "remedy" under the Act was "intended to be remedial and not punitive" as "clearly express[ing] a civil intent." 334 Or at 536. Current Oregon law contains an identical statement of purpose in ORS 131A.010(5). Moreover, as was true in *Selness*, both the statutes and constitution permit forfeiture of property owned by a person who has not been convicted of a crime if the person "should have known that the property was proceeds of prohibited conduct" or "[a]cquiesced in the prohibited conduct." ORS 131A.255(2); Or Const, Art XV, § 10(5) (providing the same). As the Court explained in *Ursery*, forfeiture in that context serves "important nonpunitive goals" of "encourage[ing] property owners to take care in managing their property and ensur[ing] that they will not permit that property to be used for illegal purposes." 518 US at 290.

Oregon's civil forfeiture laws also incorporate what the Court in *Ursery* and *89 Firearms* identified as other "'distinctly civil procedures'" for the authorized forfeiture that further point to an intent to authorize forfeiture as a civil, remedial sanction. *Ursery*, 518 US at 289 (quoting *89 Firearms*, 465 US at 363). Those procedures include that actual notice to interested persons is not always necessary, that forfeiture can proceed through a summary procedure if no claim is filed, and that the state is held to a standard of proof that in all cases is lower than the criminal "beyond a reasonable doubt" standard. *See* ORS 131A.200(1) (providing that the agency may seek an *ex parte* forfeiture judgment if no timely claim to the property was filed and no person is "known to have an interest, other than a person who is believed by the forfeiting agency to have engaged in prohibited conduct"); ORS 131A.315 (providing circumstances for a default forfeiture judgment); ORS 131A.150(4) (requiring only that "forfeiting agency shall make reasonable efforts to serve a forfeiture notice on all persons known to have an interest in the seized property"); ORS 131A.255(3) (requiring proof by preponderance of evidence for personal property and, for real property, clear and convincing evidence). The Court in *Ursery* and *89 Firearms* identified the same "'distinctly civil procedures'" as secondary indications

confirming that Congress had intended to create a civil sanction. *Ursery*, 518 US at 289 (quoting *89 Firearms*, 465 US at 363). As the Court reasoned in *Ursery*, by "creating such distinctly civil procedures for forfeitures," the legislature indicated "clearly that it intended a civil, not a criminal sanction." 518 US at 289 (internal quotation marks and brackets omitted).

We thus have no doubt that the legislature intended to authorize a forfeiture that is a civil, remedial sanction, rather than a criminal, punitive sanction, resolving the first *Ursery* inquiry. Indeed, neither the Court of Appeals nor claimant have disputed that legislative intent or disputed that, in giving effect to that intent, the legislature enacted a forfeiture scheme that conforms to the limitations on civil forfeiture imposed by Article XV, section 10. And given that intent, only "the clearest proof that the purpose and effect of the forfeiture are punitive will suffice to override [the legislature's] manifest preference for a civil sanction." *89 Firearms*, 465 US at 365 (internal quotation marks omitted).

The second *Ursery* inquiry requires us to assess whether, despite the legislature's intent, the forfeiture proceedings are so punitive in form and effect as to render them criminal. When concluding that the forfeiture at issue in *Ursery* was not in effect a criminal punishment, the Court identified as "[m]ost significant" the fact that the forfeiture statutes, "while perhaps having certain punitive aspects, serve important nonpunitive goals." 518 US at 290. The same was true of the forfeiture that we considered in *Selness*, and the same is true of civil forfeiture under current Oregon law.

In *Ursery*, the Court described the forfeiture at issue as serving the nonpunitive goals of ensuring that property is not used for illegal purposes and, in the case of proceeds, ensuring "that persons do not profit from their illegal acts." 518 US at 290-91. And *Selness*, similarly, identified provisions of the forfeiture statute that "suggest, and are consistent with, remedial purposes," specifically "(1) to render the sale and manufacture of illegal drugs unprofitable by confiscating the proceeds of those activities; (2) to make

those activities more difficult by confiscating the tools and property that have made those activities possible; and (3) to reimburse governments for their costs in enforcing drug laws." 334 Or at 536-37 (citing Or Laws 1989, ch 791, § 1(a), (c); Or Laws 1989, ch 791, § 3).

Current Oregon forfeiture law also contains provisions that suggest, and are consistent with, those same remedial aims. *See* Or Const, Art XV, § 10(2)(d) (stating principle that "[p]roceeds from forfeited property should be used for treatment of drug abuse, unless otherwise specified"); Or Const, Art XV, § 10(12)(c) (specifying distribution of net forfeiture proceeds "[t]o the State or any of its political subdivisions to be used exclusively for drug treatment, unless another disposition is specially provided by law"); ORS 131A.010(1)(c) (finding that "[g]overnments attempting to respond to prohibited conduct require additional resources"); ORS 131A.020(4), (6), (7) (specifying that "all proceeds of prohibited conduct" are subject to forfeiture as well as "all conveyances" that "are used in prohibited conduct or that are used to facilitate prohibited conduct" and "[a]ll real property" used "to commit or facilitate prohibited conduct"); ORS 131A.365(5) (providing that the state shall use a portion of forfeiture proceeds to fund the Criminal Justice Revolving Account and Special Crime and Forfeiture Account).

Nevertheless, according to claimant, several aspects of the constitutional forfeiture limitations require us to reach a different answer about the essential character of the current civil forfeiture framework than we reached in *Selness*. She points to the statement of principles in Article XV, section 10, which she views as "confining forfeiture to circumstances that promote the traditional aims of punishment—retribution and deterrence," and she points to several substantive provisions. Claimant contends that Article XV, section 10, has drastically changed forfeiture in Oregon to require "a criminal conviction as a prerequisite to obtaining a forfeiture judgment," a direct causal relationship between "the underlying criminal conduct" and the property to be forfeited, and a "substantially proportional" relationship between the value of the property and the "underlying criminal conduct." She urges us to conclude that, as a

result of those changes, Oregon's civil forfeiture law must be regarded as criminal punishment under the considerations described in the *Mendoza-Martinez* case.[12]

As an initial matter, claimant is mistaken about the significance of the reference in the statement of principles to what she views as promoting "retribution and deterrence." The Court in *Ursery* emphasized that, although promoting a purpose of deterrence generally can suggest that a sanction is criminal, the factor is not meaningful when evaluating a sanction of forfeiture, because forfeiture "serves a deterrent purpose distinct from any punitive purpose." 518 US at 292 (internal quotation marks omitted). We reasoned similarly in *Selness*, in which the defendants had pointed to "the presence of a traditionally criminal legislative purpose of deterring prohibited conduct and the inclusion of an 'innocent owner' defense"—meaning that forfeiture was tied to the owner's criminal activity—as making the forfeiture proceeding criminal in nature. 334 Or at 542. We dismissed those aspects of the law as "aspects that the court in *Ursery* expressly dismissed as inconsequential." *Id*.

Claimant is also mistaken about the significance of the proportionality requirement. Although claimant is correct that Article XV, section 10, provides that forfeiture "may not be excessive and shall be substantially proportional to the specific conduct for which the owner of the property has been convicted," claimant is mistaken about the significance of that provision. The forfeiture law that we considered in *Selness*, also had a provision requiring the court to consider upon request whether the amount of forfeiture was "excessive," based on factors including the value of the property "in relation to the criminal culpability of the person or persons engaging in the prohibited conduct." 334 Or at 520 n 7, 537 (citing Or Laws 1993, ch 699, §§ 13-15). And we characterized those provisions as suggesting "an intent to avoid punitive effects." *Id*. at 537; *see also Ursery*, 518 US at 287 (explaining that, although the forfeiture was subject to

---

[12] As described above, the considerations listed in *Mendoza-Martinez* were also listed in *Ward*, and the Court in *Ursery* explored how those factors applied in the context of a civil forfeiture, concluding that they "tend[ed] to support a conclusion that" forfeitures under the statutes at issue "are civil proceedings." 518 US at 290-92 (citing *Ward,* 448 US at 247-48, 247 n 7, 249).

review for excessiveness, "this does not mean, however, that those forfeitures are so punitive as to constitute punishment for the purposes of double jeopardy").

The remainder of claimant's argument regarding what she views as significant changes to Oregon forfeiture law rests in part on premises that are unsound. Despite claimant's characterization to the contrary, neither Article XV, section 10, nor the statutory provisions that incorporate those protections, require a conviction as a prerequisite to obtaining a forfeiture judgment in all cases. Rather, both the constitution and the controlling statutes permit forfeiture under certain circumstances without proof that the owner, or indeed anyone, was convicted of a crime. Or Const, Art XV, § 10(5)(b), (c) (permitting forfeiture under certain circumstances if the claimant "knew or should have known that the property constituted proceeds or an instrumentality of criminal conduct," or if the claimant "knew of the criminal conduct and failed to take reasonable action under the circumstances to terminate the criminal conduct or prevent use of the property to commit or facilitate the criminal conduct"); *id.* § 10(9) (permitting forfeiture without any proof of a conviction "if, following notice to all persons known to have an interest or who may have an interest, no person claims an interest in the seized property"); *see* ORS 131A.200(1) (permitting *ex parte* forfeiture of personal property without proof of conviction if no timely claim has been filed); ORS 131A.225(4) (specifying that complaint initiating forfeiture action "need not allege that any claimant has been convicted of a crime"); ORS 131A.315 (providing for default judgment of forfeiture without proof of conviction if there is no claim or responsive pleading in the action).

Nor do either the constitutional or statutory provisions require a direct causal relationship between the underlying prohibited conduct and the property to be forfeited. Instead, both permit forfeiture of property that is the proceeds or an instrumentality of "one or more other crimes similar to the crime for which the person was convicted." ORS 131A.255(1)(c), (d); Or Const, Art XV, § 10(3)(c), (d).

Although we recognize that the forfeiture sanction under current Oregon law is generally tied to a conviction

in a way that the forfeiture at issue in *Selness* may not have been, the need to prove a criminal conviction of the owner in *some* forfeiture actions does not establish that forfeiture under Oregon law is necessarily equivalent to criminal punishment. *See 89 Firearms*, 465 US at 366 (reasoning that "[w]hat overlap there is between the two sanctions is not sufficient to persuade [the Court] that the forfeiture proceeding may not legitimately be viewed as civil in nature"). Indeed, as the Court in *Ursery* emphasized, "at common law, not only was it the case that a criminal conviction did not *bar* a civil forfeiture, but, in fact, the civil forfeiture could not be *instituted* unless a criminal conviction had already been obtained." 518 US at 275 (emphases in original). Tying a sanction to criminal activity can be some indication that the sanction is a criminal penalty, but, "[b]y itself, the fact that a forfeiture statute has some connection to a criminal violation is far from the 'clearest proof' necessary to show that a proceeding is criminal." *Id*. at 292; *see Selness*, 334 Or at 541 (describing *Ursery* as having "expressly rejected arguments that the statute was shown to be punitive by the fact that it tied forfeiture to criminal activity").

It might be tempting to ignore the categories of forfeiture under Oregon law that do not require a conviction of the owner, and to simply ask whether a forfeiture proceeding "is criminal in nature and effect" when the forfeiture depends on proof that the claimant has already been convicted of prohibited conduct. But this court held in *Selness* that an owner's appearance or nonappearance cannot be the basis for determining whether the forfeiture proceeding puts a property owner "in jeopardy in the constitutional sense," because "[r]ealistically a property owner's decision to file a claim in a forfeiture proceeding under [Oregon forfeiture law], has no effect on the essential character of that proceeding." 334 Or at 524. The question before us is whether the essential character of forfeiture proceedings under current Oregon law is now "so punitive in form and effect as to render them criminal despite [the legislature's] intent to the contrary," *Ursery*, 518 US at 290, and the answer to that question must be the same regardless of whether the owner appears, *Selness*, 334 Or at 524. And because claimant has not made an argument based on the specific circumstances

of this forfeiture proceeding, it must be that "the overall forfeiture scheme" under current Oregon law is effectively criminal in its form and effect. Given that neither the constitution nor the statutory provisions require proof of a conviction when the owner fails to appear, the character of the overall civil forfeiture scheme under current Oregon law "cannot be said to be co-extensive with the criminal penalty." *89 Firearms*, 465 US at 366.

The Court in *89 Firearms* ultimately concluded that none of the other *Mendoza-Martinez* factors lent "any support" to a view that the forfeiture proceeding was punitive and "criminal in nature." 465 US at 365. The Court reached the same conclusion in *Ursery*, explaining that the considerations listed in *Ward* "tend[ed] to support a conclusion that" forfeitures under the statutes at issue "are civil proceedings." 518 US at 290-92. And we reached the same conclusion in *Selness*. There, this court considered the "aspects of the overall scheme that defendants tout as indicative of the statute's overwhelmingly criminal nature," but we were not persuaded. 334 Or at 542. We concluded that the defendants' "Fifth Amendment double jeopardy claim cannot prevail under the *Ursery* analysis" because the "forfeiture scheme" at issue in *Selness* was "indistinguishable, for purposes of the present analysis, from the forfeiture scheme that the *Ursery* court held to be civil." *Id.* at 541-42. As was true in *Selness*, claimant's arguments fail to persuade us that the civil *in rem* forfeiture authorized under current Oregon law is "so punitive either in purpose or effect as to be equivalent to a criminal proceeding." *Id.* at 541(internal quotations omitted).

In arguing that we must reach a different conclusion regarding the forfeiture authorized under current Oregon law, claimant argues that voters in 2000 intended Article XV, section 10, to restrict civil forfeiture to a sanction so close to criminal punishment that it amounts to "jeopardy" as the Supreme Court understands that term. The Court of Appeals was persuaded, concluding that those voters intended to "[i]n effect *** reject[] the legal fiction underlying *in rem* forfeitures—that property itself can be guilty so as to allow the government to take it—and replace[] it with

an *in personam* theory of forfeiture that implicates double jeopardy." *Yamhill County*, 324 Or App at 423.

We acknowledge that the sources on which the Court of Appeals relied suggest an intent to limit forfeiture to property of a person who has been convicted of a crime. As indicated above, the text of the original measure specified as a statement of principle that "[t]he property of a person should not be forfeited in a forfeiture proceeding by government unless and until that person is convicted of a crime involving the property," Measure 3(2)(b) (2000), and the voters pamphlet described the "result of 'yes' vote" as: "requires conviction before property forfeiture," Official Voters' Pamphlet, General Election, Nov 7, 2000, 236. But the court's reliance on those general provisions overstates both the extent and the significance of the alignment between forfeiture and a criminal conviction under Measure 3. *See Ursery*, 518 US at 275 (explaining that, "at common law, not only was it the case that a criminal conviction did not *bar* a civil forfeiture, but, in fact, the civil forfeiture could not be *instituted* unless a criminal conviction had already been obtained" (emphases in original)); Or Const, Art XV, § 10(9) (permitting forfeiture without a conviction "if, following notice to all persons known to have an interest or who may have an interest, no person claims an interest in the seized property").

Moreover, the focus on those indications of intent in 2000 overlooks two key obstacles: First, despite general expressions of intent, voters in 2000 did not change the characteristics of civil forfeiture that *Ursery* and *Selness* describe as the most significant indications of an intent to make forfeiture a civil, remedial sanction; and second, voters in 2008 substantially amended Article XV, section 10, in ways that demonstrate an intent to further distinguish civil forfeiture from criminal punishment.

When we determine the intent of voters who adopted an initiated ballot measure, we focus—as we do in the construction of statutes—on the measure's text and context, and on the measure's history "should it appear useful to our analysis." *Knopp v. Griffin-Valade*, 372 Or 1, 9, 17, 543 P3d 1239 (2024) (internal quotations omitted). Examining the text of Measure 3, informed by *Ursery*, there are strong

indications that voters did not intend to eliminate civil, remedial forfeiture in Oregon.

We base that conclusion on the same textual indications of intent that we identified in ORS chapter 131A and in the forfeiture statutes at issue in *Selness*. Our analysis of Measure 3 differs, however, in that the text of that measure did not purport to authorize any type of forfeiture proceeding; it only adopted limitations on when property may be forfeited. Thus, our understanding of whether the voters in 2000 intended to eliminate civil forfeiture is informed by the forfeiture mechanisms they allowed as much as by those that they prohibited.

Starting with what the Supreme Court has made clear are the most significant indications of intent, the constitutional provision adopted by Measure 3 repeatedly referred to the protections it creates as limitations applicable to "a civil forfeiture proceeding." Or Const, Art XV, § 10(3), (4) (2000). It also stated, as a principle and as a substantive provision, that proceeds from forfeiture would be distributed to serve a remedial purpose—to "be used for treatment of drug abuse unless otherwise specified by law for another purpose." *Id.* § 10(2)(d), (7).

Moreover, Measure 3 did nothing to prohibit the existing, "distinctly civil" procedural mechanisms for accomplishing forfeiture—most notably the existing use of an *in rem* procedure to accomplish forfeiture of property connected to "prohibited conduct." *See Ursery*, 518 US at 288 (explaining that Congress' intent that a forfeiture would be a civil proceeding was "'most clearly demonstrated by the procedural mechanisms it established for enforcing forfeitures under the statute[s]'" (quoting *89 Firearms*, 465 US at 363)). Claimant argues that the statement of principles at the outset of Measure 3 "appears to embrace an *in personam* theory of forfeiture," but the substantive provisions do not bear that out; nothing in Measure 3 requires forfeiture to be accomplished through an action against a person.

The fact that voters continued to allow "civil forfeiture" through an "*in rem*" proceeding is imbued with particular significance in the context of the existing and

controlling guidance from the Court in *Ursery*, which had emphasized that *in rem* forfeitures are structured "to be impersonal by targeting the property itself" and that the Court's cases have adhered to the "remarkably consistent theme" that "[*i*]*n rem* civil forfeiture is a remedial civil sanction." *Ursery*, 518 US at 289, 278. We generally presume that even laws enacted by voters "are enacted in light of the judicial decisions that preceded and bear directly on them." *Hazell v. Brown*, 352 Or 455, 465-66, 287 P3d 1079 (2012). And, applying that principle to voters in 2000, their choice to allow the legislature to continue authorizing "civil forfeiture" through an *in rem* action against the property significantly undermines claimant's premise that those voters intended to transform forfeiture into the kind of proceeding that the Supreme Court would consider to be "equivalent to a criminal proceeding" and subject to the Double Jeopardy Clause. *Selness*, 334 Or at 541.

In addition, claimant's premise that voters in 2000 intended to make all forfeiture actions the equivalent of a criminal proceeding faces a second significant obstacle because it ignores the substantial amendments that voters in 2008 made to the provisions of Article XV, section 10; it is those amended limitations that the legislature incorporated when it adopted the current civil forfeiture scheme in 2009. As we recently explained, "when interpreting a constitutional amendment adopted through an initiated ballot measure, we consider the voters' intent," and when later voters have made relevant amendments to the constitutional provisions, we must consider the intent of the later voters. *Knopp*, 372 Or at 9 (internal quotations omitted); *see id.* (considering intent of voters that approved the amended text of Article IV, section 15, which was at issue); *see also Hazell*, 352 Or at 465 (explaining that "we apply a similar method of analysis to statutes enacted by voter-initiated measures as we do to statutes enacted by the legislature, with the goal of discerning the intent of the voters who passed those initiatives into law").

In arguing that the text of Measure 3 points to an intent to transform forfeiture to a criminal punishment, claimant pointed to the statement of principles and to the

general alignment between forfeiture of property and a criminal conviction of the owner. But, as mentioned above, voters in 2008 modified those provisions in three significant ways when they adopted Measure 53.

First, Measure 53 modified the "statement of principles" in Article XV, section 10, to specify that "[t]he property of a person *generally* should not be forfeited in a forfeiture proceeding by government unless and until that person is convicted of a crime involving the property." Official Voters' Pamphlet, Primary Election, May 20, 2008, 84; Measure 53 §10(2)(b) (emphasis in original).

Second, Measure 53 modified what had been the general prohibition on forfeiture "until and unless the owner of the property is convicted of a crime" to make that provision expressly subject to exception, and the measure added new exceptions that expand the circumstances under which forfeiture does not require a conviction of the owner. *Id.* §10(3). Those exceptions permit forfeiture under certain circumstances, including if the "property constitutes proceeds or an instrumentality of crime committed by another person" and the claimant "knew or should have known that the property constituted proceeds or an instrumentality of criminal conduct," or if the claimant "knew of the criminal conduct and failed to take reasonable action under the circumstances to terminate the criminal conduct or prevent use of the property to commit or facilitate the criminal conduct." *Id.* § 10(5)(b), (c).

And third, Measure 53 substantially modified what had been a "clear and convincing" proof requirement to instead permit forfeiture upon proof by "a preponderance of the evidence" for personal property, and it entirely shifted the burden to the claimant if the property is "cash, weapons or negotiable instruments" that "were found in close proximity to controlled substances or to instrumentalities of criminal conduct." *Id.* § 10(6)(a), (b).

In other words, to the extent that the original text of Article XV, section 10, reflected an intent to closely align civil forfeiture with criminal punishment of the owner, the amendments in 2008 demonstrate an intent to attenuate the alignment between the two processes. *See Ursery*, 518

US at 289 (citing "probable cause" standard of proof as a "distinctly civil" procedural mechanism, pointing to an intent to authorize forfeiture as a civil, remedial sanction); *89 Firearms*, 465 US at 366 (explaining the significance of a decision to authorize a forfeiture remedy that "cannot be said to be co-extensive with the criminal penalty").

And in determining whether the civil forfeiture proceeding authorized under current Oregon law is intended to be equivalent to a criminal punishment, we must consider the intent of the voters who adopted the current constitutional limitations, which the legislature then incorporated into the current statutory framework. Taking into account all of the indications of intent, we are not persuaded that the forfeiture proceeding authorized under current law is intended to be equivalent to the criminal punishment that the Supreme Court would recognize as subject to the Double Jeopardy Clause.

In sum, we have explained why the forfeiture that the legislature authorized is neither intended to be criminal punishment nor is so punitive in purpose and effect that it must be viewed as criminal punishment for purposes of the federal Double Jeopardy Clause. Claimant does not contend that the legislatively authorized forfeiture is inconsistent with the limitations that Article XV, section 10, imposes— indeed, the legislature expressly incorporated those limitations. And nothing about the provisions of Article XV, section 10, or its adoption, rises to the "clearest proof" that is required to overcome the presumption that the forfeiture authorized by Oregon law is not punishment for purposes of the Double Jeopardy Clause of the federal constitution. As was true in *Selness*, claimant's arguments fail to persuade us that the civil *in rem* forfeiture authorized under current Oregon law is distinguishable "for purposes of the present analysis, from the forfeiture scheme that the *Ursery* court held to be civil." 334 Or at 542.

### III.   CONCLUSION

Civil forfeiture under ORS chapter 131A is neither intended to be criminal punishment nor is the overall scheme so punitive in purpose or effect as to persuade us that the

statutes amount to criminal punishment for the purpose of the Double Jeopardy Clause of the Fifth Amendment. Accordingly, we reverse the decision of the Court of Appeals and remand to that court for consideration of claimant's unaddressed assignments of error.[13]

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals for further proceedings.

_____

[13] Claimant raised 53 assignments of error in the Court of Appeals, but the court's resolution of the double jeopardy challenge made it unnecessary for the court to address—and the court did not address—claimant's remaining assignments of error.